## Case No. 5,101.
### FRENCH v. KINGSLAND.

## Case No. 5,102.
### FRENCH et al. v. LAFAYETTE INS. CO.
[5 McLean, 461.] [1]

Circuit Court, D. Indiana. May Term, 1853.[2]

Smith, Fox & French, for plaintiffs.
Gregory & Orth, for defendant.

OPINION OF THE COURT. This is an action of debt, on a judgment rendered in the commercial court of the city of Cincinnati; there are also counts in the declaration, on a policy of insurance. The policy of insurance was entered into in the city of Cincinnati, on certain property of the plaintiffs [French, Strong & Fine], by the defendant, to the amount of $2,500, which was lost by fire. A judgment was obtained, before the commercial court, in Cincinnati, for the amount of the policy. The defendants pleaded nil debit to the 2d, 3d, and 6th counts. And further to the 1st, 2d, and 3d counts, that they are founded on the same contract or policy of insurance. And that it was and is, a parcel of said contract, that no suit or action of any kind, should be brought against said defendant for the recovery of any claim on the policy, in a court of law or chancery, unless brought in six months after the loss. To the 4th and 5th counts, the defendant pleads nul tiel record. And further, to the 4th and 5th counts, defendant says, it is a corporation under the laws of Indiana, the principal place of business being at Lafayette, in said state. That the officers and directors are citizens of Indiana, and were, &c. That defendant was not served with process. That its agent living in Cincinnati for the purpose of making contracts of insurance, was not otherwise served, than by leaving a copy of the summons at his residence, by which the suit in Ohio was commenced. To the plea of nul tiel record the plaintiffs joined issue. And they demur to the pleas to the 1st, 2d, and 3d counts. And as cause of demurrer they say, that the matters pleaded in bar are in conflict with the law of the state, which is the law of the forum. Defendant joins in demurrer.

Among other conditions there is annexed to the policy the following: "It is further hereby provided, that no suit or action of any kind against the company, for the recovery of any claim upon, under or by virtue of the policy, shall be sustainable in any court of law or chancery, unless such suit or action shall be commenced within the term of six months next after any loss or damage shall occur; and if any such suit or action shall be commenced against the company after the expiration of six months, next after such loss or damage shall have occurred, the lapse of time shall be taken and deemed as conclusive evidence against the validity of the claim, thereby so attempted to be enforced." The plea in bar is founded on the above limitation of six months. This is not a condition on which liability is to attach. It does not affect the contract, but the remedy. A condition subsequent, for the payment of money, after the liability is fixed, by which the payment is barred, is a singular condition. It is nothing less than an act of limitation, of six months. A statute of limitation is founded upon public policy. A contract is void if made against the policy of the law. But this limitation in the policy is not only opposed to the policy of the law, but in fixing a different time from the statute, is in conflict with it. Can parties, in all contracts, make a statute of limitations for

[1] [Reported by Hon. John McLean, Circuit Justice.]
[2] [Affirmed in 18 How. (59 U. S.) 404.]

themselves, which shall bind the courts? There is no more reason why this should be done, in a policy of insurance, than in any other contract. Such a contract might well require notice of a loss, within a limited time, in order that the underwriters may inquire into it; but such is not the nature of the above limitation. The diligence required is, after the loss or damage shall have occurred, not to fix the liability, but to recover the money. By another clause the insurers are not liable to pay, until sixty days after proof of the loss—but the limitation of six months runs from the time of the loss. It may not be within the power of the party to prove the loss within six months, but if suit be not brought within that time, the agreement bars a recovery.

This is an attempt to discharge or bar a right of action, before the right occurs. It is a well settled principle, that a release can only operate upon an existing claim—a present right. Co. Litt. 265; 4 Mass. 688; 7 Mass. 155; 15 Mass. 110; 4 Pick. 368. Why has a condition or an agreement in a policy, providing that all disputes arising under it shall be referred to arbitration, been held to be void? Because it is an attempt to oust the jurisdiction of the courts. 2 Arn. Ins. 1245; 1 Phil. Ins. 23, 587; 5 State Rep. 134; 1 Wils. 129; 4 Watts 41; 6 Har. & J. 413. In 15 Mass. 110, the court say: "No cause can be found to show, that a party may be restrained by way of estoppel from maintaining an action, although it be in violation of an executory contract." An agreement for a valuable consideration or under seal, not to sue for a limited time upon a cause of action accrued or to accrue, can not be pleaded in bar to a suit, if brought before the period expires. 5 Blackf. 126; 6 Blackf. 283; 19 Johns. 133; 11 Pick. 159. Is there any difference as to the legal effect, between such an agreement, and one that suit shall not be brought, after the time limited? What is the nature of the contract of insurance? The underwriter takes the risk on his own terms, and agrees to pay the damage should a loss occur. Annexed to the policy, though not constituting an essential part of it, is an agreement, in the event of a loss the assured shall bring suit in six months or be barred. What is the consideration of this agreement? It is without consideration, unless it be considered as a part of the contract, under which the liability arises. Where a policy provided that the insured should not abandon, until six months after notice of capture to the underwriters, it was held the right to abandon accrued on the condemnation. 10 Johns. 273. If a mortgagor stipulate that his mortgage shall be irredeemable, he may still be let in to redeem. 1 Vern. 192. And if he agreed not to redeem after six months, would he be estopped? The time specified in the statute of limitations is as much a part of the policy of the law as the act itself.

It is a matter of law, and cannot be changed by the contract of parties. If they may shorten the time expressed in the act, they may extend it; or they may, by their agreement, annul it. This, it appears to me, they cannot do. It would be a dangerous power. The law was not made for particular cases, but it is founded in a general policy, and applies equally to all contracts, as specified in the act.

Several other questions are made in the case. It is insisted that the corporation is not amenable to process in Ohio. This, as a general principle, can not be controverted, but the question is, is not the insurance company, though established in Indiana, under a law of that state, amenable to the process issued in this case, under the circumstances? By the Ohio act of 1847 [Laws Ohio 1847, p. 17], it is provided that "where the principal office of such insurer is located out of this state, in all suits instituted by virtue of this act, the service of process upon the agent of such insurer for the time being, in the county in which such contract shall be made, shall be as effectual, as though the same were made upon the principal. By the general statute, leaving a copy at the residence of the party, is service. Under the act of 1851, it is provided that the summons may be served, on the president or other chief officer, or any clerk, secretary, treasurer, director, or agent, of such foreign corporation or body politic, by the sheriff, and when so served, the said corporation shall be considered in court for judgment or decree against it. Under the above acts, the suit was brought in the commercial court of Cincinnati, against "the president and directors of the Lafayette Insurance Company," the corporate name being "The Lafayette Insurance Company." And this misnomer is now made an objection. It is too late to take advantage of this variance—it should have been pleaded in the commercial court. The description of the judgment, in the declaration, is substantially good. The insurance company, by establishing an agency at Cincinnati, came into the state, not by virtue of its original act of incorporation, but under the law of Ohio. It could come in under no other conditions. The agency was established with a view to profit, and having realized the contemplated advantages, it can not claim exemption from the liabilities imposed. The agent opened an office in the city—made insurance upon property binding the corporation. In fact he discharged, so far as regards insurances, the corporate functions of the company; and this the act of Ohio permitted, on the conditions that the company should be amenable, through its agent, to the courts of Ohio, on any contract of insurance. For this purpose the Ohio act substantially sanctioned the exercise of the corporate powers within the state. The condition imposed was just, and it was accepted by the corpora-

tion, and the suit in the commercial court was brought on a policy issued by the agent. There are several corporations of other states doing business, under similar circumstances, in Cincinnati. And there is one agency from a corporation of London, making insurances in the city. Would it be politic in the state of Ohio to permit these agencies to do business within it, and leave its citizens to seek redress by suit against the company in any other state or country, wherever it may be located? This would be unjust as well as impolitic. We have no doubt that the state of Ohio had a right to prescribe the conditions on which the defendant might do business in the state, and in coming into the state for that purpose, the conditions attach.

We think the judgment of the commercial court is conclusive as to the rights of the plaintiffs, as well to the service of process as to the amount of damages. The judgment comes before us as evidence, and the court having jurisdiction, no errors in the proceeding can be objected to collaterally. In regard to the question of jurisdiction made in the pleading, that some of the stockholders are citizens of Ohio, it is only necessary to remark that the law is now settled that the state which granted the charter, and within which the corporation does its business, determines its right to sue in this court, and not the citizenship of the stockholders, as was formerly held. And we think the late decisions on this subject have established the true principles on which jurisdiction, in cases of a corporation, should be sustained. The former rule to take jurisdiction from the citizenship of the stockholders, defeated, in many cases, the object of the law, in authorizing suits to be brought between citizens of different states in the courts of the United States. The corporators having united to accomplish certain purposes, appoint their agents to manage the concern and bind the stockholders, without regard to their citizenship. Formerly the stockholders were required to be citizens of the same state, or at least that no one of them should be a citizen of the same state as the other party, as that would defeat the jurisdiction of the court. On this ground, suits by or against corporations were frequently defeated for want of jurisdiction, while the fact of citizenship had no influence upon the merits of the case or the powers of the corporation. It was an objection—a technicality, without substance, and very often defeated an important right. This action being mainly founded on the judgment of the commercial court, which we think was conclusive, the other points made in the case have been considered, as they were earnestly discussed. Judgment on the record.