The Eaton and Hamilton R. R. Co. *v.* Hunt et al.

THE EATON AND ,HAMILTON R. R. CO. *v.* HUNT *et al.*

RAILROADS—CONSOLIDATION—MORTGAGE—JURISDICTION—ESTOP-
PEL.—In 1852, the *Richmond* and *Miami* railroad company, which
was created under the laws of *Indiana*, and owned a railroad run-
ning from *Richmond, Indiana,* to the State line of *Ohio,* and the
*Eaton* and *Hamilton* railroad company, which was created under
the laws of *Ohio,* and owned a railroad running from *Eaton, Ohio,*
to the State line of *Indiana,* in the direction of *Richmond,* were,
by virtue of laws of said States respectively, consolidated into one
company, called the *Eaton* and *Hamilton* railroad company. The
law in neither State, in terms, surrendered to the other any juris-
diction over the property of said companies. Prior to the consoli-
dation, the *Indiana* company issued sixty bonds of 1,000 dollars
each, and executed a first mortgage on their road to *A*, trustee, to
secure their payment, on or before *November* 1, 1862, with interest
payable semi-annually, and they were also guaranteed by the said
*Ohio* company. Afterwards, but prior also to the consolidation,
the same company issued forty additional bonds, each for the same
amount, and executed a second mortgage on their road to the same
trustee to secure their payment. By the articles of consolidation,
it was agreed that the companies should become united as one, un-
der the name aforesaid; that the corporate name, franchises, &c.,
of the *Eaton* and *Hamilton* company should be preserved and re-
main intact, as if no consolidation had been made, except so far as
modified by the enlarged interest of the company and a compliance
with the laws of *Indiana;* that all the property and franchises of
the *Indiana* company were thereby transferred to and merged in
the *Ohio* company, and the organization and name of the former
should cease; that the *Ohio* company should assume said property
and franchises and pay all the debts and liabilities of the *Indiana*
company; and that the agreement should take effect on *December*
1, 1854. Prior to the consolidation, there had been bonds issued
by the *Ohio* company which had been made liens on her road, and
after the consolidation, bonds were issued and made a lien on the
entire road. The holders of the first bonds issued by the *Indiana*

The Eaton and Hamilton R. R. Co. *v.* Hunt et al.

company sued to enforce payment of their bonds by foreclosure of their mortgage, the trustee having refused to sell under the power in the mortgage. The suit was instituted against the *Eaton* and *Hamilton* railroad company, which appeared and defended.

*Held,* 1. That such consolidation at least effected a transfer of the property of the *Indiana* company to the *Ohio* company, and that the suit was therefore properly brought against the latter company.

2. That the *Ohio* company, having acquired title to the road in *Indiana* after the execution of said two mortgages, took the same subject thereto, and that the holders of said first mortgage bonds have a right to enforce the payment thereof by the foreclosure of said mortgage, in our own Courts, and sale of said road in *Indiana.*

3. That the power given in said first mortgage to the trustee to sell the property in certain events, if it could be exercised by him at all, did not preclude said bondholders from their remedy by foreclosure, but was in the nature of a cumulative remedy.

4. That the Courts of *Ohio* have no jurisdiction to enforce the remedy of said bondholders by the foreclosure of said mortgage, and that neither the agreements nor laws above referred to give them any such jurisdiction, even if such jurisdiction could be given in any way.

5. That the transfer of said bonds to the plaintiffs by the *Eaton* and *Hamilton* company, to which they had been transferred with the other property of the *Richmond* and *Miami* company, was not illegal by reason of the fact that they had, before maturity, been put into circulation by the latter company, into whose control they had returned before the consolidation, and that, said bonds being commercial paper and transferrable by delivery, said *Eaton* and *Hamilton* company was, perhaps, estopped to deny the legality of their own transfer.

6. The pendency of a suit in a foreign Court can not be pleaded in bar of a suit on the same cause of action in the Courts of this State.

7. When a note is made payable at a particular place, a demand of payment there need not precede an action on the note, but, if the defendant in such action, establishes ability and readiness at the time and place to pay, the plaintiff can not recover costs.

APPEAL from the *Wayne* Circuit Court.

PERKINS, J.—On the 1st day of *November*, 1852, there existed a corporation in the State of *Indiana*, created under a law of the State, with power to construct a railroad from *Richmond, Indiana*, to the *Ohio* State line, a distance of about six miles. The corporation was known by the name of the *Richmond* and *Miami* railroad company.

On the day named, that corporation issued sixty bonds of 1000 dollars each, payable to *George Carlisle* or bearer, and on the same day executed to said *Carlisle*, as trustee, a mortgage on the six miles of road named, as security for the payment of the principal and interest of the bonds. The bonds were guaranteed by a railroad company in *Ohio*, called the *Hamilton* and *Eaton* railroad company, created by or under a law of that State, and vested with power to construct a railroad from *Hamilton, Ohio*, to the State line of *Indiana*, in the direction of *Richmond* in the latter State. In 1853, the *Richmond* and *Miami* road was completed.

On the 1st day of *January*, 1854, forty additional bonds were issued by the *Richmond* and *Miami* company, and a second mortgage was executed thereby to *Carlisle*, upon the six miles of their road, to secure the payment of them.

The first mortgage bonds became due on *November* 1, 1862, and the interest on them was payable semi-annually, but was not paid.

*John Hunt* and others, plaintiffs below in this suit, are owners of fifty-seven of those first mortgage bonds. The plaintiffs had required Mr. *Carlisle*, the trustee, to proceed to enforce their rights against the railroad company, under the mortgage, and he had refused to do so.

Legislative acts of *Ohio* and *Indiana* authorized the *Eaton* and *Hamilton* and the *Richmond* and *Miami* railroad companies to consolidate, upon such terms as might be agreed upon, but neither of those acts contained any provisions surrender-

ing the jurisdiction of either State to the other over the consolidated company. At their date, the two companies executed the following articles of consolidation:

"An agreement made and entered into by and between the' *Richmond* and *Miami* railroad company, duly incorporated by the General Assembly of the State of *Indiana*, of the one part, and the *Eaton* and *Hamilton* railroad company, in like manner incorporated by the General Assembly of the State of *Ohio*, of the other part, witnesseth: That,

"*First*, These companies, their capital stock, their roads, debts, dues, rights in action, franchises, interests, and property of every kind, character and description, shall be, and hereby are, merged, united and consolidated, into one joint-stock company, one road, one interest, and one property, upon the terms following, that it is to say: .

"*Second*, The corporate name, franchises, rights, immunities and organization, of the *Eaton* and *Hamilton* railroad company, shall be preserved and remain intact, and the said consolidated company shall be known by, and its business transacted, in that name, in every sense, as if this consolidation had not taken place, except so far merely as the enlarged interests of the company, and a compliance with the laws of *Indiana*, may modify the same.

"*Third*, The debts, dues and rights in action, owing to, and accruing in favor of, the said *Richmond* and *Miami* railroad company, all and singular the rights and franchises, the road with its right of way, fixtures and appurtenances, depot and other station grounds, buildings and water tanks, with all other rights and interests and property, real, personal, and mixed, of every kind, character, and description, and all and singular, the interest, right and titles therein, whether legal. or equitable, of the said *Richmond* and *Miami* railroad company, are to be, and are hereby, granted,. transferred and con-

veyed to, and merged in, those of said *Eaton* and *Hamilton* railroad company, its successors and assigns forever, as fully and completely, to all intents and purposes, as they are now vested in the said *Richmond* and *Miami* company.

"*Fourth,* The said *Eaton* and *Hamilton* railroad company is to, and does hereby, assume the franchises, rights, immunities and liabilities of the said *Richmond* and *Miami* railroad company, and especially is to assume, liquidate and pay all debts, dues, and liabilities, outstanding against it, and to that end is, so far as the unfunded indebtedness extends, to apply semi-annually, to its liquidation, an amount equal to one-seventh of the net surplus earnings of the entire road, until the whole shall be paid, and is, upon the surrender of certificates, or other evidence of ownership of the capital stock of the said *Richmond* and *Miami* company, to issue to the party in interest evidence of ownership of a like amount of the capital stock of said *Eaton* and *Hamilton* railroad company.

"*Fifth,* This agreement shall take effect and be in force on and after the 1st day of *December,* 1854, at which time the name and organization of the *Richmond* and *Miami* company shall cease, and its separate legal identity, franchises, rights, interests, property, &c., vest and merge into those of the said *Eaton* and *Hamilton* company. In witness," &c.

*November* 21st, 1854, signed, sealed, &c., by the officers of the companies.

Prior to the consolidation, bonds and mortgages had been issued by the *Hamilton* and *Eaton* company, which were liens upon the road of that company in *Ohio.*

After the consolidation, bonds were issued, secured by mortgages on the entire line of the road, in addition to those issued prior thereto by the separate companies. At the Spring term, 1860, *Hunt* and others, the plaintiffs in this suit, brought their action in the *Wayne* Circuit Court, *Indiana,* to enforce the lien of the first mortgage bonds, owned by them,

upon the six miles of railroad constructed in *Indiana*, by the *Richmond* and *Miami* railroad company. The suit was brought against *Mr. Carlisle*, the trustee, and the *Eaton* and *Hamilton* railroad company.

The company appeared and answered. But what company was it that thus appeared? Were there, after the consolidation two *Eaton* and *Hamilton* railroad companies, one in *Indiana* and one in *Ohio?* Did the *Miami* company still exist, with her separate property, as a distinct corporation, but under the new name of the *Eaton* and *Hamilton* railroad company? See the *Ohio and Mississippi R. R. Co.* v. *Wheeler*, 1 Black (U. S.) Rep. 286. And was the suit against that corporation? If so, the suit was regularly brought against the old company by its new name. *The President, &c.* v. *Jackson et al.*, 7 Blackf. 36. But did the consolidation merge the *Richmond* and *Miami* company in the *Eaton* and *Hamilton* company, and operate to transfer the property of the former to the latter? And was this suit against the latter company? If so, the latter, the *Eaton* and *Hamilton* company, of *Ohio*, was the proper defendant, and the *Richmond* and *Miami* company was not a necessary party; nor was the latter a necessary party, even if not merged, provided the consolidation operated to transfer the property of that company to the *Eaton* and *Hamilton* company; *Burkham* v. *Beaver*, 17 Ind. 367. We think it did, at all events, effect such transfer; see *The President, &c.* v. *Jackson et al.*, *supra;* and that this suit was against the *Ohio* company; and as that company voluntarily appeared to the suit, there is no question as to the proper parties being before the Court.

But we must look a little more closely into the act of consolidation of said companies. What, in legal effect, did it amount to? By the very terms of the alleged consolidation, "the corporate name, franchises, rights, immunities and organization, of the *Eaton* and *Hamilton* railroad company, shall

be preserved and remain intact." "The name and organization of said *Richmond* and *Miami* railroad company shall cease;" but all the property; rights, &c., of the latter company, "are hereby conveyed to" "the said *Eaton* and *Hamilton* railroad company." .

It thus appears that by the act of consolidation, the exact existence of the *Ohio* company is continued, while that of the *Indiana* company is extinguished .after all its property is transferred to the *Ohio* company. It comes to this: The *Eaton* and *Hamilton* corporation bought out the *Richmond* and *Miami* corporation, and now owns a line of railroad, six miles of the west end of which is in the State of *Indiana*, and which that corporation, though a foreign one, thus owns and operates, under the authority of a law of *Indiana*. And the question now arises, to what extent can the Courts of *Ohio* exercise jurisdiction *in rem.* over that portion of the road owned by the *Eaton* and *Hamilton* company; which lies in *Indiana?*

The question arises, under these circumstances. It is set up in bar of this foreclosure suit, as we will call it, of *Hunt* and others, that a prior suit, touching the same matter, has been instituted and prosecuted to judgment, in the *Butler* County Court, of *Ohio*, to which the *Eaton* and *Hamilton* railroad company, and *Mr. Carlisle,* the mortgage trustee, for the benefit of *Hunt* and· others, were parties, though *Hunt* and the others of the present plaintiffs were not. Yet it is claimed that the *Ohio* suit, being prior in time, draws jurisdiction of the entire subject matter, and renders it necessary for all parties in interest to seek an adjudication of their rights in the Court where it is or was pending.

It will tend to clearness, perhaps, in solving this proposition, if we first ascertain what right *Hunt* and others had, which a Court of Justice was bound to enforce. They had a mortgage on six miles of railroad lying in the State of *Indi-*

*ana,* and they had a right, if necessity required it, to have a judicial decree for the sale of that six miles of road, and a sale for the making of this money secured by the mortgage; that was a contract-right, which it was, perhaps, not in the power of a State to impair, *Gantley's Lessee* v. *Ewing,* 3 How. U. S. Rep. 707; *Scobey* v. *Gibson,* 17 Ind. 572. It will not do for the company to say that that six miles of road could not be sold separately, they having purchased it after it had been mortgaged separately, subject to the mortgage. See 1 G. & H. 528, 2 *id.* 291.

It is true that the mortgage contains a grant of power to the trustee to take possession, &c., and it is probable that he could have executed the power. A statute of this State, enacted *May* 4, 1852, indeed forbids a power of sale generally in mortgages, 2 G. & H. 355; but a later statute, approved *June* 17, 1862, 1 G. & H. 651, authorizes sales by trustees under powers in trust mortgages. See 2 G. & H. 291. Both these statutes may stand, the first, however, as modified by the second. But the power of sale in the mortgage did not exclude the right of foreclosure by judicial proceedings. It was but a cumulative remedy. At all events the creditors had a right to appeal to the Courts of the State. See the authorities cited in a note to *Taber* v. *The Cincinnati, &c., Co.,* 15 Ind. on p. 467; Red. on Railways, 2 Ed. p. 572 *et seq.,* and notes.

Indeed, it is doubtful if parties can, by contract, oust the jurisdiction of the Courts. It has been said that "no cause can be found to show that a party may be restrained, by way of estoppel, from maintaining an action, although it be in violation of an executory contract," *French et al.* v. *The Lafayette, &c.,* 5 McLean 461; see 9 Ind. R. 443, *Austin* v. *Searing,* 16 N. Y. Rep. 112; Perk. Pr. 76.

And, it may be observed, in a foreclosure suit upon a trust mortgage, the Court, in the exercise of its general powers, would be able to make all orders necessary to adjust the

rights of all parties in interest, in the property that might be embraced in its decree, according to the trust.

It is not necessary that we should here examine the question whether with the road bed, &c., the corporation franchises can be sold. It is enough for the purposes of this case, that the party has a right to the sale at least of the real estate proper. But see Red. on Rail. 575 *et seq.* and our statutes *supra.* Also, 2 Am. L. Reg. (N. S.) p. 641.

This right of *Hunt* and others to foreclosure and sale, the *Ohio* Court could not, on general principles of international law, enforce for them. The States, as between themselves, are foreign to each other, Story on Prom. Notes 323; and, although the Courts of one of these States may act *in personam* upon an individual, touching real property owned by him in another of the States, even to ordering him to sell it, yet if he should refuse obedience to the order, the Court could not appoint a commissioner to make the sale in his stead, and would, in fact, be powerless to affect the sale. This has been repeatedly decided by the Supreme Court of the United States, and is according to the general doctrine of international law, *Watts* v. *Waddle*, 6 Pet. 389; *Boyce's Executors* v. *Grundy*, 9 Pet. 275; *Caldwell* v. *Carrington, id.* 86; *Watkins* v. *Holman*, 16 Pet. 25. See 15 How. U. S. R. 233, and 16 *id.* 1; Story's Conf. of Laws, §§ 17, 18, 550, *et seq.* See *The New Albany, &c., R. R. Co.* v. *Huff*, 19 Ind. 444; *Sturgis* v. *Fay*, 16 Ind. 29; Law. Wheat. Int Law pp. 280 to 286.

But it is argued, and with plausibility, that the statute of *Indiana,* authorizing railroad companies in this State to consolidate with companies in other States, embraces in it, as an incident, the grant of jurisdiction to the courts of such other States over such consolidated companies, and their roads, as may be formed.

It may be, but we do not so decide, that this State might grant jurisdiction to the courts of another State, or, at least,

grant the right to another State to authorize her courts to act on certain matters in this State, or to constitute a court in this State to act upon the rights and property of the citizens of such other State in this State. Nations by treaties provide for something akin to this. See Law. Wheat. Int. L. p. 224. But we do not think that the mere grant of authority to a foreign corporation to exercise its franchises and hold property in this State can be construed as containing a grant of judicial jurisdiction to foreign courts over the property of such corporation in this State. Such jurisdiction is not a necessity. It is scarcely consistent with the rights of our people, or the dignity of the State. The courts of this State are competent to afford all necessary relief in rendering domestic and in executing foreign judgments. See *Aspinwall v. Wheeler*, at this term. The grant could hardly be held to extend to the matter of taxation and sale for taxes, but it would be necessary that it should in order to make the foreign jurisdiction adequate to the convenience claimed for it. It is held that States will not be considered to have parted with jurisdictional power without the clearest expression of the fact. *The Newcastle, &c., Co.* v. *The Peru, &c., Co.,* 3 Ind. R. 464. As to the punishment of crimes, see *Johns* v. *The State,* 19 Ind. 421. But see Law. Wheat. Int. Law, p. 231.

Thus far we have proceeded upon a somewhat general view of the subject. It is proper that we should notice some of the points made by the appellants with more particularity. Premising, however, that many variances are amendable below or in this Court, and that the evidence is not of record, that no motion for a new trial was interposed, nor was any particular exception taken below to the lengthy final decree or judgment.

The first paragraph of the answer to the original complaint denied the existence of either the *Richmond* and *Miami,* or the *Eaton* and *Hamilton* railroad company; but, by the

articles of consolidation, which were filed with the complaint, and whose execution was not denied by the defendants, the existence of both these corporations, the merger of the former in the latter, and the continued existence of the latter, were admitted.

The second, third, fourth and fifth paragraphs of the answer may be noticed together. They aver that the sale of the bonds to *Hunt* and others was illegal, the sale of a part for one cause, and of the balance for another.

1. A part of these bonds had been put in circulation by the *Richmond* and *Miami* company, into whose hands, before maturity, they again returned, and then passed by the transfer preceding the consolidation, to the *Eaton* and *Hamilton* company, by which they were re-issued, before due, to *Hunt* and others. The mortgage for their security was still held by the trustee, *Mr. Carlisle.* As those bonds were commercial paper, and passed by delivery, we do not see why, under the powers and property possessed by the *Eaton* and *Hamilton* company, by virtue of the consolidation and preceding conveyance, the re-issue was not legal. Story on Prom. Notes, § 180. Perhaps the company, having received the money, is estopped. Red. on Rail., 1 Ed., p. 575, § 11.

2. A part of those bonds were on pledge to *Hunt* for a debt in which it is claimed usurious interest was included, and the *Eaton* and *Hamilton* company, after the consolidation, negotiated them to *Hunt* absolutely in discharge of the debt. Now, as the statute authorized the company to dispose of the bonds, at such rates as might be agreed upon, we do not think that facts are made to appear in this case which will authorize this Court, over the judgment of the Court below, to hold the sale illegal on the ground of absence of power in the directors. Local Laws 1851, § 4.

Other paragraphs set up the proceedings in the *Butler* County Court of *Ohio.* The pendency of a foreign suit can

not be pleaded, even in a transitory action, in bar of a suit for the same cause in this State. *Cook* v. *Litchfield,* 5 Sandf. R. 330; *DeArmond* v. *Bohn,* 12 Ind. 607, and cases cited. Nor can a final judgment in any Court be pleaded unless it embraces, in comtemplation of law, an adjudication upon the matter in controversy in the second suit. *Kirkpatrick* v. *Stingley,* 2 Ind. 269.

In the case at bar, aside from what has been said as to the jurisdiction of the *Ohio* Court, the judgment in that Court did not purport to make any decree touching the foreclosure of the mortgage of *Hunt* and others upon, and the sale of the six miles of railroad in *Indiana.*

Upon another point we may simply observe, that, where a note is payable at a particular place, it is not necessary to allege, in a suit against the maker, a demand of payment at that place, before suit is brought; but if the maker on the trial proves that the money was at the place, ready to be applied in payment when the note fell due, he will not be subject to costs. *The Indiana and Illinois R. R. Co.* v. *Davis,* [*ante* 6.]

As we find no error in the original judgment, it is not necessary that we should examine the suits for review.

*Per Curiam.*—The judgment below is affirmed, with costs.

*J. L. Miner, Bickle & Burchenal,* for the appellant.

*J. S. Newman, J. F. Kibbey* and *J. P. Siddall,* for the appellees.