HARTWELL, Respondent, *v.* NORTHERN P. E. Co., Appellant.

.1. Carriers—Limitation of Liability by Notice—Trial—Instructions.

In an action against an express company for the loss of a trunk, the defense being an omission to make a written claim within the time required by the shipping contract, or receipt, which was not signed by the consignor, the court charged the jury no written claim was necessary, and that, if they found that the plaintiff made a claim to the company's agent at the point where the trunk was shipped within the required time, and that the company had knowledge of the loss, they would be authorized in finding a verdict for the plaintiff. Section 1263, C. C., provides: "A consignor * * * by accepting * * * a written contract for carriage, with knowledge of its terms, assents to the rate of hire, the time, place and manner of delivery therein stated. But his assent to any other modifications of the carrier's * * * obligations contained in such instrument can only be manifested by his signature to the same." *Held*, under this section the defendant had no reason to complain of this charge.

·2. Same—Limitation of Liability by Special Contract — Signature.

Bills of lading and contracts are not "special contracts" within the meaning of section 1261, C. C., providing that "the obligations of a common carrier * * * may be limited by special contract," unless they are signed by the consignor or consignee.

·(Argued February 21, 1888; affirmed February 24; opinion filed February 4, 1889.)

Appeal from the district court of Richland county; Hon. W. .B. McConnell, Judge.

*J. C. Bullitt, Jr.*, for appellant.

The clause in the receipt was not complied with. Was the ·clause valid and binding?

Whatever doubts may formerly have existed, this question ·cannot now be considered an open one, and must be answered affirmatively. Such a regulation is not unreasonable, and must be complied with as a condition precedent to the right to re-·cover. *Express Company* v. *Caldwell*, 21 Wall. 264; *Goggin* v.

*Kansas Pacific R. Co.*, 12 Kan. 416; *Cole* v. *Western Union Tele- graph Co.*, 33 Minn. 227, 22 N. W. Rep. 385.

There is not a *scintilla* of evidence to show that any claim for loss was made at the Wahpeton office or elsewhere at any time and the condition was not complied with in any form.

The claim should have been presented within the prescribed time, even though the loss occurred through defendant's negligence. It is a familiar rule that a common carrier is responsible for all damages occasioned by its negligence, notwithstanding any contract which it may make for exemption. The Civil Code, § 1262, is merely declaratory of the common law. But, this rule does not affect a stipulation that claims for loss must be presented within a prescribed time, because such a stipulation is not a contract for exemption from liability for negligence, and is perfectly consistent with holding the carrier to the fullest measure of good faith and diligence. It excuses no negligence. It merely prescribes a duty to be performed by the shipper before he will be entitled to maintain his action, and must be complied with in all cases, whether the carrier is negligent or not. *Express Co.* v. *Caldwell*, 21 Wall. 264, 268; *Cole* v. *Western Union Telegraph Co.*, 33 Minn. 227, 228, 22 N. W. Rep. 385.

The court therefore erred in submitting the case to the jury when there was no evidence to show that a claim for loss had been presented within 90 days from the date of shipment, and in instructing the jury that a written claim was not necessary; and the verdict is wholly unsupported by the evidence, inasmuch as there is no evidence that any claim was made.

*W. S. Lauder*, for respondent.

Respondent was not bound by the terms and conditions of the receipt, for the reason that her "assent thereto was not manifested by her signature to the same." Civil Code, § 1263.

TRIPP, C. J. This is an action brought by the plaintiff for recovery of the value of a certain trunk and its contents, lost by

the defendant express company in shipping over its line from Wahpeton to Wyndmere, in the territory of Dakota.

The defense, so far as it affects this appeal, was that the trunk was shipped by plaintiff under an express contract with the defendant that the defendant, in case of loss, should not be responsible in a greater sum than $50; and that in no event should the defendant be liable for loss unless the claim therefor should be presented to the defendant in writing, at its office in Wahpeton, within 90 days from the time of making the contract; and that no such claim was ever made until long after the period of 90 days.

The jury having returned a verdict of $50 and interest, under the charge of the court, and judgment having been rendered thereon in favor of the plaintiff for the amount of the verdict and costs, the defendant appealed to this court, claiming that there was no sufficient evidence to sustain the verdict, in that there was no evidence of any claim, in writing or otherwise, having been presented to the defendant within 90 days, as stipulated in the receipt given the plaintiff, and that the court erred in its instructions to the jury.

The case shows, as it appears from the abstract, that one Harwood had brought the trunk from the state of New York, and at Wahpeton, the end of his journey, had delivered it to the defendant express company, to be delivered to the plaintiff at Wyndmere, her home, and that he took from the defendant's agent at Wahpeton a receipt, which, among other provisions, contained the following: "In no event shall the company be liable for any loss or damage, unless the claim thereof shall be presented to them in writing at this office within ninety days after this date, in a statement to which this receipt shall be annexed. The party accepting this receipt hereby agrees to the conditions herein contained." The receipt was signed by the agent of the company at Wahpeton, but was not signed by the plaintiff, nor by Harwood, acting for her. This receipt Harwood says he forwarded in a letter to the plaintiff, but she says

v.5ᴅᴀᴋ.—30

she did not receive it, and its contents were supplied by secondary evidence.

The court instructed the jury that under the contract, if the plaintiff was entitled to recover, she could not recover to exceed $50, with interest at 7 per cent. from the day of shipment. The court further instructed the jury, of which defendant complained, and to which it excepted, as follows: "But if you find that a claim was made by the plaintiff, or by any one authorized to act for her, to the company, through its agent at Wahpeton, within ninety days, and that they had knowledge of the loss of the trunk and its contents, then you are authorized to find a verdict for the plaintiff. *Second.* I will charge you, further, that if you find from the evidence in the case that a claim was made within ninety days, and the company had a knowledge of the loss of the trunk within that time, and, further, that this claim was made upon the agent at Wahpeton, that no written demand is necessary."

Under the issues as submitted to the jury, they must have found that the claim was made within 90 days; and the defendant claims there was no evidence whatever of any claim in writing being presented to the defendant, that an oral claim was not sufficient under the terms of the contract, and that the charge was misleading. In reply to this, the plaintiff in this court contends that the charge was more favorable to defendant than he was entitled to,—*First*, that under our statute (section 1263, Civil Code) the receipt in the nature of a bill of lading was not a contract binding on her, because her "consent was not manifested by her signature thereto;" and, *second*, that the condition of the contract was substantially complied with.

Section 1263 of our Civil Code reads as follows: "A passensenger, consignor, or consignee, by accepting a ticket, bill of lading, or written contract for carriage, with a knowledge of its terms, assents to the rate of hire, the time, place, and manner of delivery therein stated. But his assent to any other modification of the carrier's rights or obligations contained in such instrument can only be manifested by his signature to the same."

The language of the section does not seem to be ambiguous, and, if it means what on first reading seems to be its express meaning, we shall not be required to examine the evidence presented in the abstract to determine whether the terms of the alleged contract were complied with.    The section comes from the proposed Civil Code submitted by the New York commission to the New York legislature, but enacted for the first time in this territory in 1866, and in California subsequently, in 1872.    It comes to us in the same language reported by the commission, and was adopted by California with no material change.    This section, as well as the two immediately preceding, (sections 1261, 1262,) was founded on the decisions of New York as they existed when the report was submitted; and a reference to the doctrine of these decisions, as well as the rules of the early common law, which they are claimed to have followed, will serve to aid in the construction of the section in question.

The rules of the common law are simple and well defined. The carrier was always liable for all losses, except those occasioned by the act of God or the public enemy.    He was an insurer of the property committed to his custody, even against fire and theft, or robbery by armed men.    This was on grounds of public policy, to prevent conspiracy of the carrier with the thief or trespasser.    HOLT, C. J., in *Coggs* v. *Bernard*, 2 Ld. Raym. 918, says: "This is a politic establishment, contrived by the policy of the law for the safety of all persons, the necessity of whose affairs oblige them to trust these sorts of persons, that they be safe in their ways of dealing."    Lord MANSFIELD says (*Forward* v. *Pittard*, 1 Term R. 27) the carrier was held liable for such loss "to prevent litigation, collusion, and the necessity of going into circumstances impossible to be unraveled. The law presumes against the carrier, unless he shows it was done by the king's enemies, or by such act as could not happen by the intervention of man; as storms, lightning, and tempests. *   *   *   It appears from all the cases for a hundred years back that there are events for which the carrier is liable, *independent of his contract*.    By the nature of his contract, he is liable for

all due care and diligence, and for any negligence he is suable
on his contract. But there is a further degree of responsibility
by the custom of the realm; that is, by the *common law*, a car-
rier is in the nature of an *insurer*." BURROUGH, J., in *Smith* v.
*Horne*, 8 Taunt. 144, says: "The doctrine of notice was never
known until the case of *Forward* v. *Pittard*," *supra*, from which
we quote the language of Lord MANSFIELD, which he says he
argued many years before. An examination of that case fails
to show any such limitation, or to make any reference to the
subject of notice. The doctrine seems first to have been recog-
nized that the liability of the carrier could be limited by a spe-
cial contract and notice brought home to the party in 1804,
(*Nicholson* v. *Willan*, 5 East, 507,) by Lord ELLENBOROUGH,
though the doctrine was expressly denied by Lord KENYON in
1793, in *Hide* v. *Proprietors*, 1 Esp. 36, in which he says:
"Where a man is bound to any duty, and chargeable to a certain
extent *by the operation of law*, in such case he cannot, *by any
act of his own*, discharge himself." And, again, referring to the
common carrier, he says: "They cannot discharge themselves
by any act of their own, as by giving notice, for example, to that
effect." The doctrine, however, announced by Lord ELLENBOR-
OUGH in *Nicholson* v. *Willan*, *supra*, seems to have subsequently
obtained, and to have been carried so far as to allow the com-
mon carrier to cast off all liability whatsoever. And in *Maving*
v. *Todd*, 1 Starkie, 72, (1816,) the defendant carrier having
given notice that "he would not be responsible for loss by fire,"
Lord ELLENBOROUGH nonsuited the plaintiff; remarking, how-
ever, that, "if this action had been brought twenty years ago,
the defendant would have been liable, since by the common law
a carrier is liable in all cases except two,—where the loss is oc-
casioned by the act of God, or the king's enemies, using an
overwhelming force which persons with ordinary means of re-
sistance cannot guard against,"—thus showing the departure
that the courts had made in so short a period. In 1830, the
statute of 1 Wm. IV. c. 68, among other things enacted: "No
public notice or declaration heretofore made, or hereafter to be

made, shall be deemed or construed to limit, or in any wise affect, the liability at common law of any carriers, but that all and every such carrier shall be liable as at common law to answer for the loss or injury of the property, any public notice or declaration by them made and given contrary thereto, or in any wise limiting such liability, notwithstanding."

It would seem, then, that the common law of England, as it existed up to the time of our Revolution, did not permit a carrier to limit his liability by notice.   Judge BRONSON in *Hollister* v. *Nowlen*, 19 Wend. 234–242, after reviewing the common-law decisions, and referring to the innovation made by Lord ELLENBOROUGH upon the doctrine of notice, says: "The doctrine [referring to the decision of Lord ELLENBOROUGH, *supra*] in question was not received in Westminster Hall without much doubt; and, although it ultimately obtained something like a firm footing, many of the English judges have expressed their regret that it was ever sanctioned by the courts.   Departing, as it did, from the simplicity and certainty of the common-law rule, it proved one of the most fruitful sources of legal controversy which has existed in modern times.   When it was once settled that a carrier might restrict his liability by a notice brought home to his employer, a multitude of questions sprung up in the courts which no human foresight could have anticipated.   Each carrier adopted such a form of notice as he thought best calculated to shield himself from responsibility without the loss of employment, and the legal effect of each particular form of notice could only be settled by judicial decision.   Whether one who had given notice that he would not be answerable for goods beyond a certain value, unless specially entered and paid for, was liable in case of loss to the extent of the value mentioned in the notice, or was discharged altogether; whether, notwithstanding the notice, he was liable for a loss by negligence, and, if so, what degree of negligence would charge him; what should be sufficient evidence that the notice came to the knowledge of the employer; whether it should be left to the jury to presume that he saw it in a newspaper which he was accustomed to read, or observed

it posted up in the office where the carrier transacted his business; and, then, whether it was painted in large or small letters, and whether the owner went himself or sent his servant with the goods, and whether the servant could read,—these, and many other questions, were debated in the courts, while the public suffered an almost incalculable injury in consequence of the doubt and uncertainty which hung over this important branch of the law. 1 Bell, Comm. 474. After years of litigation, parliament interfered, in 1830, and relieved both the courts and the public, by substantially reasserting the rule of the common law. * * * If, after a trial of thirty years, the people of Great Britain, whose interests and pursuits are not very dissimilar to our own, have condemned the whole doctrine of limiting the carrier's liability by a notice; if after a long course of legal controversy they have retraced their steps, and returned to the simplicity and certainty of the common-law rule,—we surely ought to profit by their experience, and should hesitate long before we sanction a practice which not only leads to doubt and uncertainty concerning the rights and duties of the parties, but which encourages negligence, and opens a wide door to fraud." The question in *Hollister* v. *Nowlen*, from which this quotation is made, was one of notice,—whether the carrier by general notice could limit his liability for the luggage of the passenger; and in discussing this question of notice the learned judge further uses the following pertinent language: "The argument is that where a party delivers goods to be carried, after seeing a notice that the carrier intends to limit his responsibility, his assent to the terms of the notice may be implied. But this argument entirely overlooks a very important consideration. Notwithstanding the notice, the owner has a right to insist that the carrier shall receive the goods subject to all the responsibilties incident to his employment. If the delivery of goods under such circumstances authorizes an implication of any kind, the presumption is as strong, to say the least, that the owner intended to insist on his legal rights, as it is that he was willing to yield to the wishes of the carrier. If a coat be ordered from a me-

chanic after he has given the customer notice that he will not
furnish the article at a less price than one hundred dollars, the
assent of the customer to pay that sum, though it be double the
value, may perhaps be implied; but if the mechanic had been
under a legal obligation, not only to furnish the coat, but to do
so at a reasonable price, no such implication could arise." And
referring to the common law he says: "The doctrine that a
carrier may limit his responsibility by a notice was wholly un-
known to the common law at the time of our Revolution. It has
never been received in this, nor, so far as I have observed, in any
of the other states." Id. 248.

This subject received also, at the same time, a very careful
consideration in *Cole* v. *Goodwin*, 19 Wend. 251, in which the
carrier sought to avoid his liability for a trunk of the passen-
ger by notice brought home to him that "all baggage is at the
risk of the owner." Judge Cowen, after a very elaborate review
of all the common-law decisions, announced his conclusion as
follows: "I therefore think the defendants in the case at bar
must take the consequence of their obligation as common car-
riers, notwithstanding the notice to the plaintiff. Admitting
that the plaintiff acceded in the clearest manner to the prop-
osition in the notice that his baggage should be carried on the
terms mentioned, I think the contract thus made was void on
his part, as contrary to the plainest principles of public policy.
In thus holding, we follow the law as it is expressly admitted
by the English judges to have stood at the period when our
ancestors declared themselves independent; and, while we thus
fulfill our constitutional duty, we are not, like Westminster Hall,
obliged to lament while we enforce the law."

The doctrine of these cases was extended in *Gould* v. *Hill*, 2
Hill, 623, in which a majority of the court held that "common
carriers cannot limit their liability or evade the consequences
of a breach of their legal duties, as such, by an express agree-
ment or special acceptance of the goods to be transported."
But the court of appeals in *Dorr* v. *Navigation Co.*, 11 N. Y.
485, affirming the doctrine of *Hollister* v. *Nowlen*, and *Cole* v.

*Goodwin, supra,* denies the doctrine of *Gould* v. *Hill, supra,* and says: "That a common carrier may, by express contract, restrict his common-law liability, is now, I think a well-established rule of law;" citing English and American cases. The case of *Dorr* v. *Navigation Co., supra,* was one of carriage of merchandise, in which the carrier sought, by notice contained in the bill of lading, to limit its liability as to fire, accidents, etc., holding itself liable only "for ordinary care and diligence." In *Bissell* v. *Railway Co.*, 25 N. Y. 442, this doctrine was extended to allow the carrier to contract with a passenger to take upon himself the risk of damage from the negligence of the agents and servants of the carrier. The case, was, however, decided by a majority of the court only; Chief Justice DENIO, with whom were Judges WRIGHT and SUTHERLAND, making a vigorous dissent. In *Navigation Co.* v. *Bank,* 6 How. 378, the supreme court of the United States held that a provision in a bill of lading, stipulating "that the carriers are not to be responsible in any event for loss or damage," does not exonerate them from want of ordinary care. And in *Express Co.* v. *Caldwell,* 21 Wall. 266, in which a company provided in its receipt that it would not be liable for loss on any package, etc., delivered to it, unless claim should be made within 90 days, the supreme court held that such contract was valid; and in an elaborate opinion Justice STRONG, referring to "the conflict existing in modern decisions," as to how far the carrier may by contract limit his common-law liability, says: "All the modern authorities concur in holding that, to a certain extent, the extreme liability exacted by the common law originally may be limited by express contract. The difficulty is in determining to what extent, and here the authorities differ. Certainly it ought not to be admitted that a common carrier can be relieved from the full measure of that responsibility which ordinarily attends his occupation without a clear and express stipulation to that effect obtained by him from his employer. And even when such a stipulation has been obtained the court must be able to see that it is not unreasonable.  *  *  *  Hence, as we have said,

it is now the settled law that the responsibility of a common carrier may be limited by an express agreement made with his employer at the time of his accepting goods for transportation, provided the limitation be such as the law can recognize as reasonable, and not inconsistent with sound public policy. This subject has been so fully considered of late in this court that it is needless to review the authorities at large. In *York Co. v. Railroad Co.*, 3 Wall. 107, it is ruled that the common-law liability of a common carrier may be limited and qualified by special contract with the owner, provided such special contract do not attempt to cover losses by negligence or misconduct. And in a still later case, (*Railroad Co. v. Lockwood*, 17 Wall. 357,) where the decisions are extensively reviewed, the same doctrine is asserted. The latter case, it is true, involved mainly an inquiry into the reasonableness of an exception stipulated for, but it unequivocally accepted the rule asserted in the first-mentioned case. The question, then, which is presented to us by this record, is whether the stipulation asserted in the defendant's plea is a reasonable one, not inconsistent with sound public policy." In Pennsylvania, the right of the carrier to limit his liability by special acceptance is well established. *Atwood v. Reliance Co.*, 9 Watts, 87; *Bingham v. Rogers*, 6 Watts & S. 495; *Laing v. Colder*, 8 Pa. St. 479.

The decisions of the different states, as will be seen without further reference, are by no means harmonious; and it affords a strong argument in favor of the propriety of settling the conflicting decisions by statute, as has been done in this territory. The decisions of the courts have varied, and are now conflicting, as to whether the common-law liability of the carrier may be limited (1) by notice brought home to the party; (2) by special acceptance of goods for carriage; (3) by express contract between the parties. There is much diversity of opinion of the courts how far such liability may be restricted or limited on grounds of public policy. Our statute has aimed to settle these conflicting decisions. Sections 1261, 1262, Civil Code, read as follows: "Sec. 1261. The obligations of a common carrier can-

not be limited by general notice on his part, but may be limited
by special contract." "Sec. 1262. A common carrier cannot·
be exonerated, by any agreement made in anticipation thereof,
from liability for a gross negligence, fraud, or willful wrong, of
himself or his servants." Section 1263, *supra*, supplements and
makes clear section 1261. Section 1261 is founded upon the
common-law doctrine as announced by Justices BRONSON and
COWAN in *Hollister* v. *Nowlen*, and *Cole* v. *Goodwin*, 19 Wend.
*supra*, and denies the right of a common carrier to limit his lia-··
bility by a general notice. It adopts the decision of *Dorr* v.
*Navigation Co.*, *supra*, in so far as it promulgates the rule of al- ·
lowing the carrier to limit his liability by special contract; but
it limits and qualifies that case in so far as it applies to a case ·
of bill of lading accepted by the shipper, by providing in sec-
tion 1263 that the shipper who does not sign the bill of lading
or contract of carriage consents only by accepting it to the rates
of hire, time, place and manner of delivery. If the carrier de-
sires him to assent to any modification of his common-law lia-
bilities contained in such instrument beyond this, he must re-
quire it to be signed by the shipper; in other words, passenger ·
tickets, bills of lading, and written contracts for carriage are not
"special contracts," within the meaning of section 1261, that·
can limit the obligations of the common carrier, unless they are
signed by the passenger, consignor, or consignee. These two ·
sections prescribe the manner in which the liability of the com-·
mon carrier may be limited, and section 1262 prescribes the ·
extent to which that liability may be limited. It limits the··
right of parties in advance of carriage to agree to exonerate
from liability for gross negligence, fraud, or willful wrong of the··
carrier or his servants. All contracts to relieve from gross neg-
ligence, fraud, or willful wrong, on the part of the carrier or his··
servants, are by the terms of this statute expressly prohibited.
The object of this section is obvious. They settle for this ter-··
ritory the conflicting decisions of the common law. They make·
unnecessary any discussion of the better rule, worked out by·
the learned decisions, to meet a fancied necessity for modifica--

tion of that laid down by the older cases. This legislation has settled the conflict, and adopted a rule while somewhat variant, yet much in harmony with the later and better decisions of the courts. Applied to this case, the receipt relied upon by defendant did not have the signature of plaintiff or consignor. It was therefore not a "special contract," which could limit the carrier's liability; it was a mere notice, which would not limit his obligation. His obligation was to deliver the trunk to the consignee named in the contract. He contracted to do so under his general obligation as a common carrier, and that he would be liable for the loss or injury thereof, except from "(1) an inherent defect, vice, or weakness, or a spontaneous action, of the property itself; (2) the act of a public enemy of the United States, or of this territory; (3) the act of the law; or (4) any irresistible superhuman cause." Section 1275, Civil Code.

He did not modify this contract in any manner provided by statute, and he must be held to his liability as such common carrier. Under this statute, parties can only relieve themselves from their obligations as common carriers in the manner therein pointed out. There is another provision of our statute, to which our attention has been called, which perhaps should receive some consideration by the court in the determination of this case. Section 958 of the Civil Code reads as follows: "Every stipulation or condition in a contract, by which any party thereto is restricted from enforcing his rights under the contract by the usual legal proceedings in the ordinary tribunals, or which limits the time within which he may thus enforce his rights, is void." The first part of the section contains nothing new, and is substantially the common-law doctrine as pretty uniformly announced by the decisions of all the courts; but the latter clause, which declares unlawful every stipulation or condition in a contract, "which limits the time within which the party may enforce his rights," is perhaps against the great weight of modern authority. The question has been much mooted, and it has been vigorously contended that the law alone should establish limitations of actions. This view was urged

upon the attention of the court by no less distinguished counsel than Benjamin F. Butler, in *Fullan* v. *Insurance Co.*, 7 Gray, 61; but the court then denied the doctrine, and asserted that the opposite view had so long obtained there as to become the settled law of the state. And the same view is held in *Brown* v. *Insurance Co.*, 5 R. I. 394; *Insurance Co.* v. *Candle Co.*, 31 Pa. St. 448; *Wilson* v. *Insurance Co.*, 27 Vt. 99; *Ames* v. *Insurance Co.*, 14 N. Y. 266. It is claimed that the earlier decisions of New York took the other view, which was adopted by the commissioners; but the later view in New York and other states seems to be adopted by the supreme court of the United States in *Express Co.* v. *Caldwell*, 21 Wall. 264, cited *supra*. There are, however, very respectable authorities which announce the rule laid down by our statute, and the earlier decisions of New York, among which are *Insurance Co.* v. *Insurance Co.*, 9 Ind. 443; *French* v. *Insurance Co.*, 5 McLean, 461.

But it is not worth the while of the court to compare the reasoning of the repective courts, or to determine which is the better adapted to our locality. Our legislature has seen fit to settle the conflict, and its decision is as much binding upon us when it determines the conflict against, as well as when it determines it in favor of, the weight of authority as announced by the courts.

The language of the statute confines its prohibition of limitation to enforcement of rights, and is especially intended to cut off all limitations of time for commencement of actions. The provision of this receipt is perhaps rather a condition precedent than a limitation, and, as it is not necessary to this case to determine whether the limitation in this receipt comes within the prohibition of this statute, we shall leave this question for adjudication by the court whenever it shall be fully presented in a case involving this precise point.

In the view we have taken of this case, the defendant has nothing to complain of in the charge of the court. It was more liberal than he was entitled to under the statute, as we have construed it, and it will be unnecessary for us to examine

whether, under the evidence, there was a substantial compliance with the terms of the receipt or contract of carriage, as to the claim within 90 days, since it was not assented to by her signature, nor binding upon the plaintiff. The judgment of the district court is affirmed. All the justices concur.