## LOTHIAN v. WESTERN UNION TELEGRAPH CO.

Under Civ. Code, §§ 1576, 1577, a carrier of messages by telegraph is a "common carrier," and required to use "the utmost diligence."

Assuming that under Civ. Code, § 1582, the obligation of a telegraph company as a common carrier may be limited by special contract, it cannot under section 1583 exonerate itself by agreement in anticipation thereof from liability for gross negligence, fraud, or willful wrong.

Where both parties moved for a directed verdict, and no findings of fact were stated by the court in its ruling on either motion, and no material evidence was introduced on defendant's behalf, in determining the facts upon which a directed verdict for plaintiff was based, plaintiff's evidence should be given its full probative force with every reasonable inference required to sustain the trial court's action.

"Gross negligence" may be defined as "the want of slight care and diligence."

Unreasonable delay in the delivery of a telegram, either where a showing of ordinary diligence exonerates or where a showing of slight diligence will exonerate, gives rise to the same inference, and casts upon the company the burden of showing exculpatory facts.

Under Civ. Code, § 1606, permitting a person whose message is refused or postponed to recover from the company his actual damages and $50 in addition, and section 2312, providing that, for breach of an obligation not arising from contract, the measure of damage is the amount which will compensate for all detriment proximately resulting, whether it could have been anticipated or not, detriment proximately resulting and which must be presumed to have been contemplated by the parties cannot be held the measure of damages for negligent delay in delivering a telegram.

Evidence not found in either abstract, though contained in the original record, cannot be considered.

A telegraph company's agent was informed that a message was very important;. that plaintiff wanted an answer right away; that his wife's sister was sick; and that his wife wanted to go and see her if still alive. The message was delayed five days, and the sister recovered before plaintiff's wife reached her. **Held,** that it not being unreasonable to infer that, if the message had been promptly transmitted, a prompt reply would have been received, and the journey by plaintiff's wife avoided, the expense thereof could be recovered, even if the rule be taken to be that the detriment suffered must have resulted proximately and been in the contemplation of the parties.

(Opinion filed, April 5, 1910.)'

Appeal from Circuit Court, Grant County. Hon. JAMES 'H. McCOY, Judge.

Action by W. I. Lothian against the Western Union Telegraph Company. From a judgment for plaintiff and an order denying a new trial, defendant appeals. Affirmed.

*Bailey* & *Voorhees* and *Frederic B. Eaton,* *(George H. Fearsons of counsel),* for appellant. *That .L Fuller,* for respondent.

HANEY, J. This is an action to recover for injuries alleged to have resulted from defendant's failure to deliver an accepted message. It was commenced before a justice of the peace, appealed to the circuit court, and there tried de novo. At the close of all the evidence, the defendant moved the court "to instruct the jury to find for the plaintiff for the amount of $1.30, with costs and disbursements of the action, and the accrued interest thereon, as the plaintiff had not proven his right to recover anything in excess of that amount." At the same time the plaintiff moved the court to direct a verdict in his favor for $100, the amount demanded by the complaint. Defendant's motion was denied, plaintiff's granted, judgment accordingly entered, defendant's application for a new trial denied, and this appeal taken from the judgment and order refusing a new trial.

The complaint contains appropriate allegations concerning defendant's corporate existence and business, the filing of the message, its contents, failure to transmit and deliver, circumstances showing extent of plaintiff's injury, a disclaimer of damages in excess of $100, and a demand for judgment for that amount, together with costs and disdursements. It also is alleged therein that

the plaintiff paid $1.30, for which defendant agreed to transmit the message, but wholly failed to do so, and that the plaintiff, "in order to guard against mistakes and delay, offered to pay, and did pay, the said plaintiff one-half the regular rate charged, in addition to the regular fee, but still defendant wrongfully, willfully, and negligently failed to transmit or deliver the message" to either of the parties to whom it was addressed. Defendant, in its answer, denies each and every allegation of the complaint not specifically admitted. It admits its own corporate existence, admits receiving the message, but alleges it was accepted subject to terms indorsed on the back thereof, which are set out in full, admits the message was not a "repeated" or "insured" message, and admits plaintiff paid $1.30 for its transmission.

It is contended plaintiff was entitled to recover only the price of transmission, because "the telegram was not a repeated message." The message was accepted at Milbank, in this state, January 19, 1904. It was written on one of defendant's blanks, on the face of which these words were plainly printed: "Send the following message subject to the terms on back hereof, which are hereby agreed to." It was addressed, "To Rev. T. A. Stamp, or Mrs. O. D. Peck, Kalama, Wash.," signed by the plaintiff and read as follows: "Lydia coming, if not too late, answer where to go. Mrs. Peck, please forward if gone." The terms on the back of the message applicable to the contention under discussion are as follows: "To guard against mistakes or delays, the sender of a message should order it repeated; that is, telegraphed back to the originating office for comparison. For this, one-half the regular rate is charged in addition. It is agreed between the sender of the following message and this company, that said company shall not be liable for mistakes or delays in the transmission or delivery, or for nondelivery of any unrepeated message, beyond the amount received for sending the same; nor for mistakes or delays in the transmission or delivery, or for nondelivery of any repeated message, beyond fifty times the sum received for sending the same, unless specifically insured, nor in any case for delays arising from unavoidable interruption in the

working of its lines." So there was a special contract, assent to which on the part of the plaintiff was manifested by his signature, wherein it was expressly agreed that defendant should not be liable for the nondelivery of any "unrepeated" message beyond the amount received for sending it. The courts are not in accord as to the validity of such a stipulation. See note Blackwell M. & E. Co. v. Western U. T. Co., 10 Am. & Eng. Ann. Cas. 857. In this jurisdiction a carrier of messages by telegraph is a common carrier, and required to use "the utmost diligence." Civ. Code, §§ 1576, 1577; Kirby v. Western U. T. Co., 4 S. D. 105, 55 N. W. 759, 30 L. R. A. 612, 621, 624; 7 S. D. 623, 65 N. W. 37, 30 L. R. A. 612, 621, 624. Assuming its obligations as a common carrier may be limited by a special contract, defendant cannot be exonerated by any agreement made in anticipation thereof from liability for the gross negligence, fraud, or willful wrong of itself or its servants. Civ. Code, §§ 1582, 1583; Hartwell v. Railway Co., 5 Dak. 463, 41 N. W. 732, 3 L. R. A. 342; Meuer v. Railway Co., 5 S. D. 568, 59 N. W. 945, 25 L. R. A. 81. Both parties moved for a directed verdict. Neither requested the submission of any issue to the jury. No findings of fact were stated by the court in its ruling on either motion, and no material evidence was introduced on behalf of the defendant. Therefore, in determining the facts upon which the directed verdict was based, plaintiff's evidence should be given its full probative force with every reasonable inference required to sustain the action of the trial court. Notwithstanding the allegations of his complaint, plaintiff was permitted, without objection, to testify that he paid $2.10 for sending the message. Fifty times that sum aggregates $105, an amount in excess of the verdict. Hence, regarding the transaction as involving a "repeated" message within the meaning of the special contract, a conclusion not clearly inconsistent with all the evidence, the direction of the trial court was not erroneous, provided plaintiff's injury justified the recovery allowed. And even though the transaction involved an "unrepeated" message within the meaning of the special contract, and such contract was valid, the ruling was right if the evidence justified the conclusion that defendant or any of its servants was guilty of gross negli-

gence, fraud, or willful misconduct. Though the message was accepted at Milbank in the forenoon on January 19th, it had not been received by defendant's agent in Kalama or delivered to either addressee at a late hour on January 24th. "A carrier of messages by telegraph must, if it is practicable, transmit every such message immediately upon its receipt." Civ. Code, § 1604. There is abundant authority for the doctrine that proof of an unreasonable delay in delivery, or of a failure to deliver, creates a presumption of negligence on the part of the carrier, and casts upon it the burden of showing exculpatory facts or circumstances. 27 Am. & Eng. Ency. Law, 1031. Plaintiff proved the acceptance of an important message requiring an immediate answer, which in the usual course of telegraphic communication would have been transmitted, if not delivered, within a few hours at most, the transmission of which was delayed five days at least. What caused this unreasonable delay? Gross negligence may be defined as "the want of slight care and diligence." 29 Cyc. 423. Decisions may be found which appear to hold that a different rule should prevail as to the burden of proof when gross negligence is charged from that governing cases of ordinary negligence. The distinction does not seem to be well founded. If proof of unreasonable delay requires explanation in cases where a showing of ordinary diligence exonerates, why should not proof of the same fact require explanation where a showing of slight diligence will exonerate? "Where the reason is the same, the rule should be the same." Civ. Code, § 2410. Unreasonable delay, unexplained, in either case, naturally gives rise to the same inference. In one as in the other the cause of the delay is known to the carrier, usually to it alone. Its silence in either case should be taken as a confession of its inability to excuse its apparent disregard of duty. So, assuming the special contract to be valid and that the burden rested upon the plaintiff to prove gross negligence, we think on the undisputed facts disclosed by the record in this case the trial court was warranted in directing a verdict in favor of the plaintiff for more than the sum paid for sending the message.

The contention that the directed verdict was erroneous because a claim for damages was not presented within 60 days as required by the special contract is untenable, assuming such contract to be valid, for the reason that plaintiff testified without objection: "I made a demand on the company within 60 days after the sending of the message."

The contention that "the court erred in making an assessment of respondent's damages in the arbitrary sum of $100" is not tenable if the detriment suffered by the plaintiff was within the proper measure of damages. The evidence on this branch of the case was received without objection. It related to the expense of a journey by plaintiff's wife to and from the Pacific Coast; the railroad fare from Milbank to Kalama and return alone being more than the amount of the verdict—the amount demanded by the complaint. It is further contended that the verdict should not have exceeded the price paid for sending the message, for the reason that the detriment suffered by the plaintiff was not the proximate result of defendant's negligence, and cannot be presumed to have been contemplated by the parties at the time the message was accepted. Though this contention does not appear to have been advanced in the court below, either by an objection to plaintiff's evidence or as a ground for granting defendant's motion to direct the verdict, it will receive attention on the assumption that it involves the sufficiency of the evidence to sustain the verdict that was directed. Every person whose message is refused or postponed contrary to the provisions of the chapter of the Civil Code relating to common carriers is entitled to receive from the carrier his actual damages and $50 in addition thereto. Civ. Code, § 1606. For the breach of an obligation not arising from contract, the measure of damages, except where otherwise expressly provided by the Civil Code, is the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not. Id. § 2312. Hence the rule stated in appellant's brief is not the one applicable to this case. And, if it were, defendant's contention would not be tenable. Plaintiff testified without objection that he told defendant's agent

the message was very important; that he wanted an answer right away; that his wife's sister was sick in Washington; and that his wife wanted to go and see her sister if she were still alive. Counsel for appellant attempted to avoid the effect of his testimony by referring to evidence not found in either abstract, which, though if contained in the original record, cannot be considered at this time. Valley City L. & I. Co. v. Shone, 2 S. D. 344, 50 N. W. 356; Noyes v. Lane, 2 S. D. 55, 48 N. W. 322; Bem v. Bem, 4 S. D. 138, 55 N. W. 1102; Cleveland v. Evans, 5 S. D. 53, 58 N. W. 8. It appeared that plaintiff's sister-in-law had recovered before his wife reached the state of Washington. It is not unreasonable to infer that if his message had been properly transmitted and delivered a prompt reply would have been received, and his wife's journey would have been avoided. Having heard her sister was seriously ill, and being unable to ascertain her situation, it was natural that plaintiff's wife should hasten to her bedside, and that her husband would afford her every facility within his power for doing so. Her conduct and his was precisely what defendant's servant should have anticipated in view of the circumstances known to him. Therefore, even under the rule contended for by defendant, the detriment proved was the proximate result of defendant's negligence and within the contemplation of the parties when plaintiff's message was accepted. Finding no reversible error, the judgment appealed from is affirmed.

McCOY, J., taking no part in the decision.