CASE 61—PETITION ORDINARY—OCTOBER 3.

# Woolfolk, &c., vs. Ashby, &c.

APPEAL FROM HOPKINS CIRCUIT COURT.

1. Joint owners of a single tract of land cannot be required to bring separate actions for the recovery of possession against each person in possession, where there are several of them, merely because they hold and claim separate parcels thereof, and have no joint possession; but may bring a joint action against them.

2. A party is estopped to deny the validity of the title under which he entered and claims to hold possession.

3. In a suit in which the validity of a decretal sale of the land of a lunatic, made in 1837, upon the petition of her committee, under the act of 1831, (2 *Statute Law*, 892,) was assailed, a witness stated that the lunatic "had a family until she became insane, and for some months afterwards," but did not state that the lunatic had a family at the time the order of sale was made, of whom the family consisted, nor what the witness meant by the word "family." *Held*—That the proof was defective. The witness should have stated the facts upon which he based his opinion.

4. Fifteen or sixteen plaintiffs, as heirs at law, unite in an action to recover the possession of land. Proof that the ancestor left eleven children, and that plaintiffs and another were her children and heirs, did not authorize the court, in its instruction to the jury, to assume the heirship of plaintiffs as proved.

JAMES HARLAN, for appellants, cited 1 *Mar.*, 371; *Act of* 1813, 1 *Stat. Law*, 806, sec. 5; 6 *Dana*, 466; 1 *Story's Equity Jur.*, sec. 322; 3 *John., Chan. Rep.*, 347; *Act of* 1831, 2 *Stat. Law*, 802; 6 *Dana*, 87; 9 *Dana*, 273; 8 *B. Mon.*, 104; 5 *Mon.*, 451; *Revised Statutes*, 396.

JOHN W. CROCKETT for appellees.

CHIEF JUSTICE SIMPSON DELIVERED THE OPINION OF THE COURT:

This action was brought to recover the possession of several pieces of land, which all adjoined each other, and, in fact, constituted but one tract. Four persons were made defendants, and were alleged to be in the possession of the land, and to withhold it from the plaintiffs.

It is shown by the pleadings of the defendants, and the evidence in the cause, that the defendants did not have a joint possession of the land sued for, but that each one held and claimed a distinct and separate parcel thereof. On this state of case, a question has been made as to the right of the plaintiffs to maintain a joint action against the defendants.

Woolfolk, &c., vs. Ashby, &c.

The practice of suing several tenants in the same action of ejectment was generally prevalent in this country under the former mode of proceeding, where the questions were substantially the same; and indeed a different practice would be not only impolitic, but oppressive. It is not the policy of the Code of Practice to multiply actions unnecessarily, but, on the contrary, it authorizes the joinder of causes of action in some cases which would not have been tolerated under the former system of pleading. The petition in this case presents but a single cause of action, although it describes and sets out by specific boundaries, several distinct parcels of land. The plaintiffs are tenants in common, and claim it all under the same title; so far, therefore, as they are concerned, their right to the land depends upon the same questions. The defendants in this case rely substantially on the same defense; and if, in any case, they might find it proper to rely upon separate matters of defense, the court might award them a separate trial. But joint owners of a single tract of land should not be required to bring separate actions against each person in possession, where there are several of them, merely because they hold and claim separate parcels thereof, and have no joint possession. We are, therefore, of the opinion that the plaintiffs had a right to bring a joint action against the defendants.

The objections which are made to the title of the plaintiffs may be disposed of in a very few words. All the parties to the action, defendants as well as plaintiffs, claim the land in controversy under the title of Nancy Ashby. The defendants having, therefore, acquired the possession of the land, and claiming to hold it under her title, are not in an attitude to dispute it. They are estopped to deny the validity of her title, and it was not incumbent on the plaintiffs to show that she had any title, but only to show that the defendants obtained the possession of the land, and claimed to hold it under her title, which was virtually admitted by the defendants in their answers.

It, however, devolved upon the plaintiffs to make it appear that they were themselves invested with the title of Nancy Ashby. To do this, they had to prove that the decretal sale,

under which the defendants claim, was void, and that they were the heirs at law of said Nancy Ashby, and in that character entitled to the land in controversy.

The death of Nancy Ashby was admitted by the defendants in their answer. They did not, however, admit, but denied, that the plaintiffs were her sole heirs at law. The proof of heirship was very indefinite and unsatisfactory, the witness who deposed on the subject stating that Nancy Ashby left eleven children, and that the plaintiffs and F. M. Ashby were her children and heirs. Now, as there were fifteen or sixteen plaintiffs, they could not all of them have been her children, or she must have had more than eleven children, so that there was an evident defect in the proof on this point.

The validity of the sale under which the defendants claim, depends upon the fact whether Nancy Ashby had a *family* at the time the order was made directing the land to be sold. She had been found to be a lunatic, and the order of sale was made in the year 1837, upon the petition of her committee, in which it was stated that a sale of the land was necessary for her support, as all her other estate was exhausted.

By the act of 1831, (2 *Stat. Law, p.* 802,) which was in force at the time the sale was ordered, it was provided that the court should in no case order the sale of any estate belonging to a lunatic who had a family.

The testimony on this point was also very indefinite and unsatisfactory, the witness who deposed on the subject merely stating that she had a family until she became insane, and for some months afterwards. Of whom the family consisted, or what the witness meant by the word " family," he did not state. Neither did he state that she had a family at the time the order of sale was made.

Whether she had such a family, as contemplated by the statute, was not a question for the witness to determine. He should have stated the facts upon which he based his opinion that she had a family, and the law would have determined whether or not his opinion was correct.

Notwithstanding, however, the deficiency of proof with regard to these two points—both of which were essential to the

recovery of the plaintiffs—the fact that Nancy Ashby had a family at the time the order of sale was made, as well as the heirship of the plaintiffs, was assumed by the court in its instructions to the jury, who were authorized thereby to find for the plaintiffs, without any reference to the evidence which had been introduced on either point. In this respect the instructions of the court were erroneous, and unauthorized by the testimony in the cause.

Wherefore, the judgment is reversed, and cause remanded for a new trial and further proceedings not inconsistent with this opinion.