CASE 13—PETITION EQUITY—MAY 31, 1887.

# Kincaid, &c., v. McGowan, &c.

APPEAL FROM MENEFEE CIRCUIT COURT.

1. DEEDS—RESERVATION OF MINERALS AND TIMBER.—The owner of land may convey a surface estate in fee in it, and reserve to himself an estate in fee in the minerals or any particular species of them, in which case the vendor holds a distinct and separate estate in the minerals. By this severance each estate is subject to the law of descent, devise and conveyance.

2. SAME—An estate in fee in land carries with it all metals and minerals thereunder, unless the metals and minerals are excepted in the conveyance, or have before been severed in ownership, and the right thereto vested in some other person.

3. SAME—When the mines form part of the general inheritance they will be transferred along with the lands, without being expressly mentioned in the conveyance; but when they have a distinct possession or inheritance, a distinct title to them must also be established.

D. sold and conveyed to M. a parcel of land out of a larger boundary which he owned, reserving to himself "all the minerals and mines in the bowels of the boundary," one-half of the timber and a mill-seat thereon. He afterwards conveyed to K. the boundary of which this was a part, excepting from the conveyance so much of the boundary as had been previously conveyed to other persons, naming them. K. claims that under the conveyance from D. to him he is entitled to the minerals and timber which D. reserved to himself in the conveyance to M. *Held*—That neither the mineral and timber interest nor the mill-seat passed by the conveyance to K., as these interests were separate and distinct from the surface right conveyed, and apt words were required to convey them.

4. ACTIONS TO QUIET TITLE—PARTIES TO ACTION—Any person, having the legal title and possession of lands, may bring an action in equity in the circuit court of the county where the land, or some part of it, may lie, against any person setting up a claim thereto, for the purpose of establishing and quieting his title to the land, and all of the adverse claimants, whether by independent titles or not, may be joined as defendants.

S. F. J. TRABUE FOR APPELLANTS.

1. The court erred in requiring plaintiffs to elect whether they would prosecute the first or second and third paragraphs of their petition.

2. The plaintiffs having the legal title, and being in possession, it was proper to make as many persons parties to their bill as have adverse claims. (Armitage v. Wickliffe, 12 B. M., 494, 495; Bissham's Equity, sec. 575; Beard v. Smith, 6 Mon., 505; Hiatt v. Calloway, 7 B. M., 180; Dudley v. Trustees of Frankfort, 12 B. M., 612; Cates v. Loftus, 4 Mon., 442; 7 Bush, 49.)

3. The lower court erred in ruling that the minerals and timber could not be held by one person and the land by another, and that the title to the minerals and timber within the boundaries set out in the deeds to McGowan passed to him. The property in minerals and timber may be vested in other persons than the owner of the fee. (Collier on Mines, page 15; Earl of Cardigan v. Armitage, 3 B. & C., 197; 3 D. & R., 414; Bainbridge on Mines, secs. 33 and 34; Armstrong v. Caldwell, 53 Pa. St., 287; Caldwell v. Copeland, 37 Pa. St., 430.)

Kincaid, &c., v. McGowan, &c.

W. P. D. BUSH AND E. F. TRABUE ON SAME SIDE IN PETITION FOR REHEARING AND MODIFICATION OF OPINION.

1. The special demurrer did not and could not raise any question whatever as to the legal effect of the title papers therein referred to, which were filed with the petition, to be used as evidence on the trial, (Civil Code, secs. 120, 128; Green &c., v. Page, &c., 80 Ky., 370; Haney, &c., v. Tempest, &c., 3 Met., 95.)

2. The deed of June 9, 1843, passed all the rights and estates the grantor then had in the tract of land described, and therefore passed the timber, minerals, etc., which he had expressly reserved to himself by deed made prior to that date.

As to rules for construction of deeds, see Blackstone, vol. 2, pp. 16, 18; 3 Kent's Com., pp. 401, 402; 1 Washb. on Real Property, 4th ed. top page 3; Williams on Real Property, pp. 13, 14; Bingham on Sale of Real Property, pages 190, 239, 258, 295, 298; Caldwell v. Copeland, 37 Pa. St. Rep., 427; 3 Washb. on Real Property, 4th ed., top pp. 397-8; Ib., top pp. 403-404; Ib., top pp. 431, 433; 7 Dana, 279-280; 1 Mason, 11; Crosby v. Montgomery, 38 Vt., 238.)

WM. LINDSAY OF COUNSEL ON SAME SIDE.

PETERS & TYLER, THOMAS TURNER, H. C. LILLY & SON FOR APPELLEES.

1. The court did right in requiring plaintiffs to elect. The relief sought against Gray is inconsistent with that sought against the other defendants. (U. S. Life Ins. & Trust Co. v. Nattier, 1 Handy, 217; Tompkins v. White, 8 How., 520; Civil Code, secs. 83, 84, 85; 8 Bush, 646; 2 Duv., 520; 13 B. M., 403; 18 B. M., 555; 6 Bush, 36; 2 Bush, 452; 1 Met., 245.)

2. The plaintiffs do not state facts sufficient to show their right to maintain an action to quiet title. (Scott, &c., v. Means, 4 Ky. Law Rep., 298; Fraley v. Peters, 12 Bush, 470; 2 Story, 826, 859.)

3. By his deed to Plummer and Kincaid, Duckham did not pass the timber, minerals and mill-seat which he had reserved to himself in the deeds to the McGowans. (Bainbridge on Mines, p. 168.)

4. The petition does not sufficiently describe the land in controversy. (Civil Code, sec. 125.)

5. The demurrer should have been sustained, because large quantities of land in the petition are excluded from the claim of the plaintiff to the lands named in the Timmons patent, and there is no allegation that the defendants are not claiming within the bounds of the excluded claims. (Madison's heirs v. Owens, Littell's Select Cases, p. 281; Taylor v. Taylor, 3 A. K. Mar., 19.)

JUDGE BENNETT DELIVERED THE OPINION OF THE COURT.

The appellant's petition contains three paragraphs—the first against William Gray, the second against the appellees, and the third against John M. Clayton. The allegations of the petition which are common to all of the paragraphs are, that on the fourth day of January, 1786, the Commonwealth of Virginia granted to Dean Timmons twenty-two thousand acres of land, which lie in Menefee and Wolfe counties, this State, and that Thomas Duckham, on the ninth day of June, 1843, he being the owner thereof, sold said survey of land to Edward Kincaid, the appellant's ancestor, and Samuel Plummer, except the tracts previously sold by Thomas Duckham to Powell Rose, James Cox and J. P. McGowan. That on the fourth day of October, 1846, Samuel Plummer sold his undivided interest in said land to Edward Kincaid, who thereby became the owner of the whole, and held and owned said land at the time of his death, except the tracts which he had previously sold to Dr. William Congleton, Spencer and John ———, and George Centers. That the appellants, as the children and grandchildren of Edward Kincaid, he having died intestate, inherited said land from him, and that they own and are in the actual possession of the same, except said parcels sold by Edward Kincaid, and the tracts sold by Duckham to Powell Rose, James Cox and J. P. McGowan.

The first paragraph of the petition alleges that Wm. Gray holds a deed to five hundred acres of said land; that the deed purports on its face to have been executed by Thomas Duckham as the attorney in fact of Edward Kincaid, but that said Duckham had no authority from

Edward Kincaid to make said conveyance; and that the said deed is void, but, nevertheless, cast a cloud upon their title, which the appellants ask the chancellor to remove by declaring said deed to be void, etc.

The second paragraph alleges that the appellees "are setting up some sort of claim to some part or interest in the said balance of the said twenty-two thousand-acre tract," under some contract made with Thomas Duckham, the vendor of Edward Kincaid. Appellants also allege that they do not know the exact nature of the appellee's claim, but do know that they are giving out in speeches that they own and have the right to hold, possess and sell portions of said plaintiffs' lands, and also the minerals under and timber upon certain other parts of said survey of twenty-two thousand acres, which minerals and timber belong to these plaintiffs. It is also alleged that the claim of the appellees, although groundless, impairs the value of the appellants' land and casts a cloud upon their title. The chancellor is asked to compel appellees to exhibit any title they may have to said land, or to the minerals and timber under and upon any land lying within the said twenty-two thousand-acre survey; and that the appellants' title be quieted, etc. The third paragraph alleges that John M. Clayton "asserts that he holds title to some portion of the said balance of the twenty-two thousand-acre survey, as the remote vendee of Thomas Duckham, and gives out publicly that he can sell and pass a good title to purchasers, and that these plaintiffs have not a good title," whereby he greatly impairs the vendible value of their estate. They also allege that the claim of Clayton is groundless. They

ask that he be required to exhibit his claim of title, and that their title be quieted, etc.

Upon motion of the appellees, the lower court required the appellants to elect to proceed on the first paragraph or second and third paragraphs. The appellants excepting to the ruling of the court, elected, under protest, to proceed on the second and third paragraphs.

Thereafter the appellants amended the second paragraph of their petition. The appellees then entered a general and special demurrer to the second paragraph of the appellants' petition as amended, both of which were sustained by the lower court, and the appellants electing to stand by their pleadings, the second paragraph was dismissed. They have appealed to this court. The amended petition sets out a more specific description of the land claimed by appellants. It also exhibits two deeds of conveyance from Thomas Duckham to James P. McGowan, the first dated the second day of February, 1842, and the second dated the twenty-first of November, 1842. The first deed conveys a certain boundary within the twenty-two thousand-acre survey, but "reserves" to the grantor "all minerals and mines in the bowels of the boundary" conveyed, "and one-half of the timber included in said boundary, and a mill-site on Glady creek."

The second deed conveys a certain other boundary of land within said twenty-two thousand-acre survey, but reserves to the grantor "one-half of all the mines and minerals in the bowels of the earth" within said boundary, and "one-half of the timber thereon," except on the south side of the river. On that side he

reserves all of the timber, except that which is "on Swift Camp."

It is alleged in the appellants' amended petition that the minerals and timber claimed in their original petition are the minerals and timber reserved in these two deeds. The special demurrer raises the question of the appellants' right to these minerals and timber. We will dispose of that question first. The appellants' contention is that they are entitled to the minerals and timber reserved by Duckham in said conveyances, by virtue of his deed to Edward Kincaid and Samuel Plummer, dated the ninth of June, 1843, which conveyed to them all of the twenty-two thousand-acre survey of land, only deducting therefrom "what" Duckham had sold and made deeds to prior to that date. In other words, that Duckham's reservations in said deeds, being a landed estate of inheritance in himself, were included in his conveyance of the entire twenty-two thousand-acre survey, which conveyance, to Edward Kincaid and Samuel Plummer, only excepted the surface conveyances previously made by him.

An estate in fee in land carries with it all metals and minerals thereunder, unless the metals and minerals are excepted in the conveyance, or "have before been severed in ownership, and the right thereto vested in some other person." The surface and the metals and minerals may be a distinct property from each other by separate conveyances from individuals. (Bingham on Sales of Real Property, page 288.)

Minerals in place are land. They are subject to conveyance. The surface right may be in one man and

the mineral right in another. Both in such a case are land-owners. They own separate and distinct corporeal hereditaments. (Caldwell v. Fulton, 31 Penn. State R., 475.)

The owner of land may convey a surface estate in fee in it and reserve to himself an estate in fee in the minerals, or any particular species of them, in which case the vendee holds a distinct and separate estate in the surface, or soil, and the vendor holds a distinct and separate estate in the minerals. By this severance each estate is subject to the laws of descent, of devise, of conveyance. (Adam, &c., v. Briggs Iron Company, 7 Cush., 361.)

Also, by the severance each estate is as distinct property in the respective owners as is the property in a two-story house, where the title to the lower story is in one person and the title to the upper story is in another person. An action of ejectment will lie in behalf of the owner of the surface to recover it; also an action will lie in behalf of the owner of the mineral estate to recover it; also, the right of either owner may be barred by the statute of limitations.

Now, then, Duckham sold to McGowan two parcels of land out of a larger boundary which he owned. These two parcels of land were each designated and set apart by metes and bounds, thereby becoming separate and distinct tracts of land, not only from each other, but from Duckham's remaining portion of the survey. The title to the surface or soil, however, was only conveyed to McGowan in each of these boundaries, together with such portions of the minerals and timber as above set forth. Duckham retained his title to the other minerals and timber, also a mill-

site on one of the tracts. The interest that he retained was a separate and distinct interest in the two boundaries, which interest by the said conveyances, by metes and bounds, became separate and distinct from the remaining portion of the survey. Indeed, it not only became a distinct interest from the remaining portion of the survey, but a distinct and separate estate from the surface estate which was conveyed to McGowan. So Duckham owned, after these two conveyances, an absolute estate in all of the remaining portion of the twenty-two thousand-acre survey, and also owned a distinct estate in the other two parcels, consisting of minerals, timber and a mill-site. He sold to Edward Kincaid and Samuel Plummer the remaining survey, which he called, in the deed of conveyance, land. Of course this, by operation of law, passed title within that boundary to the vendees to the center of the earth, and included the minerals therein. In that deed he expressly deducted the parcels of land theretofore conveyed. In these parcels he owned a mineral and timber interest and a mill-site. These parcels were separate parcels from the portions sold to Kincaid and Plummer ; also Duckham's interest therein was separate from said portion.

Now, it seems to us clear that the deed from Duckham to Kincaid and Plummer did not embrace the separate and distinct mineral and timber interest and mill-site that Duckham owned in these two tracts of land, which had been previously separated from the portion of the survey sold to Kincaid and Plummer.

Bainbridge, on the Law of Mines and Minerals, Amer-

ican ed., side page 129, says : ''When the mines form part of the general inheritance, they will, of course, be transferred. along with the lands, without being expressly mentioned in the conveyance, but when they form a distinct possession or inheritance, a distinct title to them must also be established.''

''In the latter situation the mines will still, of course, retain the qualities of real estate, and will be transferred by conveyances applicable to the particular disposition of them intended to be made.''

So it seems that the mineral and timber interest and mill-site reserved by Duckham, in these two tracts of land, being a distinct interest from the surface right conveyed, and also being separated from the balance of the twenty-two thousand-acre survey by designated boundaries, it would require apt words to convey these separate interests.   To illustrate, suppose the mill-site reserved had' had upon it a fine flouring mill, or there had been a valuable stone quarry (which is a mineral interest) opened on the land, or a fine lead or silver seam on it, worth thousands of dollars, would it be contended that the conveyance of the adjoining portion of the survey—we say adjoining, because the two tracts had become separated from it by metes and bounds—would include these interests? Surely not. The unhesitating answer would be that these were distinct and separate interests, which could only be conveyed by apt words.

We think, therefore, that the lower court did right in sustaining the special demurrer to the second paragraph of the petition

The next question is, was the general demurrer rightfully sustained?

It is distinctly alleged in the petition that the appellants have the legal title to all of the balance of the twenty-two thousand-acre survey, after deducting the parcels previously sold by Duckham, and the parcels sold by Edward Kincaid after his purchase, and that they are in the actual possession of said balance, less about one thousand acres occupied by squatters. It is also alleged, in substance, in the first paragraph, that Gray claims title to five hundred acres of this balance under a deed which is void. It is alleged, in the second paragraph, that the appellees claim some of this balance by some kind of title derived from Thomas Duckham. It is also alleged that Clayton claims a part of said land by some kind of title derived from Duckham.

By an act of the Legislature, approved March 9, 1854, it is provided: "That hereafter it shall and may be lawful for any person, having both the legal title and possession of lands, to institute and prosecute suit by petition in equity, in the circuit court of the county where the lands, or some part thereof, may lie, against any other person setting up claim thereto; and if the plaintiff shall be able to establish and does establish his title to said land, the defendant shall be by the court ordered and decreed to release his claim thereto," etc. This act was not repealed by the General Statutes, and is now in full force.

Pomeroy, in his work on Remedies and Remedial Rights, section 369, in treating of actions to quiet titles, says: "The very object of the proceeding assumes that there are other claimants, adverse to the plaintiff, setting up titles and interests in the land or other subject-

matter hostile to his.    Of course, all these adverse
claimants are proper parties defendant, and if the de-
cree is to accomplish its full effect of putting all litiga-
tion to rest, they are necessary defendants." He
further says, on the same page, that "this action has
been greatly extended by statute, especially in the
Western States, and is there an ordinary means of
trying a disputed title beween two opposite claim-
ants.    The general scope of these statutes is as fol-
lows : The plaintiff must.be in possession claiming an
estate in the lands.    The adverse claimant or claimants
must be out of possession, and must assert a hostile
title or interest.    In this condition, the possessor of
the land, without waiting for any proceeding, legal or
equitable, to be instituted against him, may take the
initiative, and, by commencing an equitable action,
may compel his adversaries to come into court, assert
their titles, and have the controversy put to rest in
a single judgment.    It is plain, therefore, that this
statutory suit is the converse of the legal action of
ejectment."

So it is clear that by the act of the Legislature of
the ninth of March, 1854, any person, having the legal
title and possession of land, may bring an action in
equity in the circuit court of the county where the
land or some part of it may lie, against any person
setting up claim thereto, for the purpose of establish-
ing and quieting his title to said land.    But for this
remedy, what remedy would the owner of the legal
title and possessor of the land have?    He can not
bring an action of ejectment, because he has the pos-
session of the land.    The adverse claim, however

worthless it may be, clouds his title, and may be used injuriously to embarrass and belittle it, and to greatly depreciate its market value; for prudent persons would neither buy the property, at a fair value, while thus affected, nor loan money upon its security, although assured by the best lawyers that the adverse claim was worthless. The object of the statute was, therefore, to provide a certain remedy, notwithstanding the fact that equity, independently of the statute, affords substantially the same remedy.

The suit authorized by the statute of the ninth of March, 1854, is the converse of the legal action of ejectment. See Pomeroy, *supra*. And this court in Woolfolk, &c., v. Ashby, &c., 2 Met., 288, having decided that an action of ejectment will lie against as many persons as hold an adverse possession of the land, although each one holds the possession of a distinct parcel from the other, and by a distinct claim of right, it follows that, under the statute, *supra*, in an action to quiet the title to land, all persons setting up claim thereto, whether or not each claims a separate parcel of the land by distinct right, may be joined in the suit as defendants.

Also, it seems clear that in an equitable action to quiet the title to land, independently of the statutory authority, all of the adverse claimants, whether by independent titles or not, may be joined as defendants. Indeed, as the object to be accomplished is the putting of all litigation about the title to rest, it is not only desirable, but proper to make all adverse claimants defendants. (See Pomeroy, *supra*.)

In the case of Scott, &c., v. Means, &c., 80 Ky.,

460, the petition did not disclose that there was a controversy between the parties as to the location of the boundary. It simply alleged that the defendants had trespassed upon plaintiffs lands, and slandered their title. For trespass upon land or the slander of title an action at law for compensatory damages is ordinarily, an adequate remedy. Therefore, this court held, in that case, that an action in equity to quiet title and settle the question as to the alleged trespass would not lie. Also, that as the plaintiff's right in the possession of the land in dispute could be settled by an action at law, such action at law should have preceded an action in the nature of a bill of peace. The other cases relied on by appellees involve the same principle. Those cases are unlike this. Here the appellants, as alleged by them, are the legal owners of the land, and have the actual possession of it. The appellees are not complained of as trespassers or slanderers of the title, but as adverse claimants of the title, which beclouds the appellants title, and injures the market value of their land. For this wrong there is no redress, except by an action in equity to quiet title.

We think that the lower court erred in sustaining the general demurrer to the second paragraph of the petition and in ruling the appellants to elect.

For these reasons the judgment of the lower court is reversed, and the case is remanded, with directions for further proceedings consistent with this opinion.

Judge Holt not sitting.