## KIRBY v. WESTERN UNION TELEGRAPH CO.

1. In this state a telegraph company is a common carrier. Comp. Laws, 3881-3910.

2. A common carrier has a right to make, and as a condition precedent to insist upon a compliance with, reasonable rules and regulations, designed to protect its interests, and promote the safe and convenient transaction of business, when the same contravene no consideration of public policy, and in no manner affect its liability under the statutory or common law.

3. The statutory obligation and common law liability of a telegraph company to accept, safely transmit, and promptly deliver a message is in no manner modified, limited, or intrinsically affected by a regulation in all respects reasonable, which requires the sender to present in writing a claim for damages within 60 days after the message is filed with the company for transmission; nor does such regulation shorten the time within which an action for damages may be commenced.

(Syllabus by the Court. Opinion filed Oct. 29, 1895.)

Appeal from Minnehaha county court. Hon. E. PARLIMAN, Judge.

This case was first decided by this court in an opinion reported in 4 S. D. 105, 55 N. W. 759, in which opinion the judgment of the court below in favor of the plaintiff was affirmed. Thereafter a rehearing was ordered in the case. This opinion is upon the rehearing. The former decision is disaffirmed, and the judgment appealed from is reversed.

*Bailey & Voorhees,* (*George H. Fearons,* of counsel) for appellant.

As to matters which do not limit its duties or liabilities, a common carrier can make its own regulations for the conduct of its business, so long as they are reasonable. Wheeler Law of Carriers, 130, Express Co. v. Caldwell, 21 Wall. 264; Wolf v. Telegraph Co., 62 Pa. St. 83; Lewis v. Railroad, 5 Hurl. & N. 867; Western v. Doughterty, 15 S. W. 468; Heimann v. Western, 57 Wis. 562; Massengale v. Western, 17 Mo. App. 257; Western v. Meredith, 95 Ind. 93; Western v. Pells & Ray, 2 Tex. L. Rec. 276;

McKinney v. Western, 5 *Id.* 173.   The power of congress over the territories is derived from the provisions of the constitution empowering congress "to make all needful rules and regulations." National v. County, 101 U. S. 129; The city of Panama, *Id.* 453; Murphey v. Ramsey, 114 *Id.* 15; Mormon v. United States, 136 *Id.* 1.

*Joe Kirby,* for respondent.

The police power is the general power of the state to preserve and promote the public welfare, even at the expense of private rights.   18 Am. & Eng. Ency. L. 39; Philadelphia v. Postal, 67 Hun. 21; McCandless v. Railroad, 18 L. R. A. 440, 16 S. E. 429.

FULLER, J.   This case now before us on rehearing, is reported in 4 S. D. 105, 55 N. W. at page 759.   There is no dispute about the facts, which are fully·stated in the former opinion, and the only question of law engaging our attention, concerning which we are inclined to take a different view, will be disposed of in determining the right of a telegraph company to decline to accept a message for transmission, for the sole reason that the sender will not consent to the following stipulation:   "The company will not be liable for damages or statutory penalties in any case where the claim is not presented in writing within sixty days after the message is filed with the company for transmission."

The right of a common carrier to make and insist upon a substantial compliance with reasonable rules and regulations, designed to protect its interests and promote the safe and convenient transaction of business, when the same do not affect its liability, has been so uniformly recognized by all the courts that any citation of authorities would be redundant; and, although Sections 3886 and 3888 of the Compiled Laws authorize and would sustain an express agreement limiting the obligations of a telegraph company to accept, transmit, and deliver a telegram, a regulation exacting such an agreement as a condition precedent to the acceptance of the message is repugnant to the spirit of the statute, and would be condemned as fraudulent, oppressive, and contrary to

every consideration of public policy. We are therefore called upon to consider and determine whether the regulation complained of was reasonable, and whether, by its acceptance, the company's common law liability or statutory obligation was limited or modified. The message which plaintiff refused to write upon one of the ordinary blanks furnished by the defendant to its patrons, because its agent and operator declined to erase, among other stipulations, the clause requiring any claim for damages or statutory penalties to be presented in writing within 60 days, was addressed to a client of the plaintiff residing at a neighboring railway station, and omitting date, signature, etc., was written in the following language, upon a sheet of white writing paper: "Come down in morning. Want to see you as to your case."

It is *prima facie* apparent from the nature of this message, and from the proximity of the parties interested in the subject to which it relates, that, ordinarily, 60 days would be a reasonable time within which to apprise the company of any damages occurring from a neglect of duty in transmitting or delivering the same; and if, from any cause, it should become unreasonable in its application, the courts would not sustain its enforcement. The stipulation relates to and impliedly concedes that the company is bound to pay any damages which may be sustained by reason of its inexcusable neglect to perform every duty required by law; and its obligation to accept, safely transmit, and promply deliver the message is in no manner modified, limited, or intrinsically affected thereby. The defendant was ready and willing to receive and transmit plaintiff's message, subject to all the liability imposed by the statutory or common law; but in view of the multiplicity of similar transactions, and in order to be able to determine whether the damage, if any should be sustained, was occasioned by some superhuman, irresistible cause, or the negligence of officers or agents, it had been taught by common experience to require as a condition precedent, but not as a limitation of liability, that it should be notified and advised of any claim for damages within a reasonable time. Such a regulation is benefi-

cial to the patrons of the company, as it tends to insure prompt adjustment of claims for damages, and is entirely consistent with sound business principles; and from the very nature of the service to be performed, and from the probable difficulty in ascertaining facts concerning which no notice has been given until after years have elapsed, it evidently tends to avoid vexatious litigation, promote the ends of justice, and subserve the welfare of the people generally. True it is that cases may be found where a similar regulation has been construed to constitute a limitation of liability, and some courts have held that the clause has the effect of a statute of limitations; but the reasoning of the opinions in which such a conclusion has been reached is, in our opinion, unsound, and we decline to follow the decisions.

The statutory time within which an action for damages may be instituted against a telegraph company is in no manner shortened by requiring a mere claim therefor to be made within a reasonable time. The action may be brought at any time within the statutory limitation. Insurance companies, regardless of distance and facilities for communication, habitually require, as a condition precedent, notice of a death or fire to be given forthwith, and even sworn proof of loss to be furnished at the home office of the company within 30, 60, or 90 days; and it will hardly be claimed that such a requirement limits the time within which an action may be brought under the statute, or that the stipulation is inconsistent with considerations of sound public policy. Before presenting authorities in support of our position, we emphasize, by repetition, that the defendant would be clearly liable for damages and the statutory penalty for refusing to accept and send plaintiff's message to its proper destination if the regulation to which he refused to assent and conform was an unreasonable rule, or limited either the liability of the company or the time within which an action might be commenced. The legislative intention, as expressed in every statute of limitation, is to prevent the indefinite postponment of the time within which action may be brought; and the evident design, purpose, and effect of the regulation com-

plained of is not only to insure better service to the public, by en-abling the company to promptly investigate any alleged derelic-tion of duty on the part of its agents, but to promote an early set-tlement of just demands, and make it possible to resist, in courts of justice, groundless, false, and fraudulent claims for damages; and, while some of the authorities from which we shall quote inci-dentally mention the provision requiring notice to be given within a specified time as a limitation of liability, they have forcefully re-jected the doctrine in unambiguous declarations, and by deciding their cases in accordance with the views expressed in this opinion.

It has been held that "a printed stipulation at the bottom of an express company's receipt for a package, that the company shall not be liable for any loss unless written claim therefor shall be made at the shipping office within thirty days from that date, is valid, and must be complied with." Express Co. v. Hunnicutt, 28 Am. Rep. 385. In Hartwell v. Express Co., 5 Dak. 463, 41 N. W. 732, the jury was instructed that "no written claim was necessary, and if they found that the plaintiff made a claim to the company's agent at the point where the trunk was shipped within the re-quired time, and the company had knowledge of the loss, they would be justified in finding a verdict for the plaintiff"; and the court held that "the defendant had no reason to complain of the charge," and says: "Under the issues submitted to the jury, they must have found that the claim was made within ninety days." Although the question whether such a regulation constitutes a limitation of the action or of the liability of a common carrier does not seem to have been regarded by counsel for either party as es-sential to a decision of the case, the learned judge who wrote the opinion in discussing the proposition, at page 476, 5 Dak., and page 732, 41 N. W., says, concerning our statute of limitations: "The language of the statute confines its prohibition of limitation to enforcement of rights, and is especially intended to cut off all limitations of time for commencement of actions. The provision of this receipt is, perhaps, rather a condition precedent than a limitation; and, as it is not necessary to this case to determine

whether the limitation in this receipt comes within the prohibition of this statute, we shall leave this question for adjudication by the court whenever it shall be fully presented in a case involving this precise point.

Concerning the regulation under consideration, the supreme court of Indiana says: "Here there is no attempt to limit or impair the operation of the statute. Nothing is taken from the duty imposed upon the telegraph company, nor is that duty lessened or circumscribed in any particular. The duty is left undiminished, but a limitation is fixed within which a claim for loss or injury resulting from a breach shall be made. It is one thing to limit a duty, and quite another thing to prescribe a time for making a claim based on the nonperformance of that duty. The cases cited in the original opinion fully sustain the power of the telegraph company to make reasonable rules and regulations, and a rule embodied in the contract that the claim shall be presented within sixty days is unquestionably a reasonable one. * * * In a broad sense, the word 'damages' means that which is assessed in the plaintiff's favor as the amount of his recovery, and the statutory penalty is in this sense damages." Telegraph Co. v. Jones, 95 Ind. 235.

From 25 Am. & Eng. Enc. Law, at pages 798 and 799, we quote the following: "The stipulation contained in the usual contract of sending, to the effect that the company will not be liable for damages in any case where the claim is not presented in writing within a certain length of time after the message is filed with the company for transmission, does not tend to limit the liability of the company for the consequence of its negligence, and is not unreasonable, where the time allowed is not too short to enable the party claiming damages to become aware of the injury, and to present his claim properly. The reasons for this rule are obvious, and it has been upheld where the time was limited to sixty days, to thirty days, and to twenty days, after the filing of the message for transmission, though the rules as to the reasonableness of any particular length of time may change with peculiar circumstances,"

In Telegraph Co. v. Dougherty, 54 Ark. 221, 15 S. W. 468, the views of the court upon the proposition are expressed as follows: "We know of no principle of the common law that would prohibit it. It was not a contract to cover the negligence of the telegraph company. It was a stipulation against the delay and neglect of the plaintiff in presenting his claim, and it does not appear unreasonable. By reason of the character of the business, and the great number of messages sent over the lines of a telegraph company, and the importance of early information of claims, to enable the company to keep an account of its transactions, and the impossibility of recalling them all and accounting for them from memory after a lapse of a considerable period of time, it does not appear that a stipulation that a claim for damages should be presented in writing within sixty days from the time the message is sent is unreasonable. Such a condition is not only not a stipulation against the negligence of the company, but it implies that a liability may be incurred for negligence; and it requires that one who seeks to recover damages for such negligence shall present his claim in writing within sixty days, or be held to have waived it."

In Kansas, a stipulation that "no claim for loss or damages on live stock will be allowed unless the same is made in writing before or at the time the stock is unloaded" was held to be in contravention of no statute, and repulsive to no consideration of public policy, and the court said: "The contract pleaded does not pretend to relieve the defendant from the consequences of his own negligence. It only stipulates that the shipper shall on his part perform certain duties." Goggin v. Railroad Co., 12 Kan. 416.

In Sherrill v. Telegraph Co., (N. C.) 14 S. E. 94, the court goes on to say: "The stipulation that the company will not be liable unless the claim is presented 'in writing and within sixty days' is not a stipulation restricting the liability of the telegraph company for negligence. Massengale v. Telegraph Co., 17 Mo. App. 257. If it were, it would be void, as was held in Thompson v. Telegraph Co., 107 N. C. 449, 12 S. E. 427; Smith v. Telegraph Co., 83 Ky. 104; Gillis v. Telegraph Co., 61 Vt. 461, 17 Atl. 736,

in which last case numerous authorities are cited. But this stipulation is rather against the neglect of the plaintiff in not making known his cause of complaint within a reasonable time. It is a reasonable requirement, enabling the company to inquire into the nature and circumstances of a mistake in, or of the delay or non-delivery of, the message, while the matter is still within the memory of witnesses. With the number of telegrams constantly passing over the wires, some such stipulation is absolutely necessary to protect the company from imposition. It is not a statute of limitations restricting the time within which an action may be brought."

In Wolf v. Telegraph Co., 62 Pa. St. 83, the court, speaking through Justice AGNEW, said: "This condition has no relation to the duty of the telegraph company, its operation being confined to a duty to be performed by the employer before he can maintain an action for a neglect of the company's duty, to-wit, to give notice of his claim within sixty days. Similar provisions in policies of insurance have been held to be good. * * * In relation to the duties which concern the public, the unreasonableness of the rules adopted by these companies must therefore be scanned with an eye to their public policy. But, clearly, it is not unreasonable that a telegraph company should require notice of claims for its defaults within a reasonable time before being held to answer for the alleged default. From the very nature of its business, this may be essential to its protection against unfounded claims. These companies have often to wrestle with the elements themselves, in the storms which prostrate their lines or prevent their working, and are not to be held to a harsher rule than common carriers who are excused by the act of God. Within sixty days the cause preventing the transmission of a message on a particular day might be easily ascertained and shown, which after the lapse of several years could not be discovered or proved. It is urged that the employer might not discover the failure to send his message forward within this time. How far this fact would displace the condition it is not proper now to say; but the reason is inap-

plicable to this case, where, from the nature of the message, its failure to reach its destination must be known; and was known immediately, by the employer. Another reason justifying the reasonableness of the provision for notice of the claim is found in the multitude of the messages transmitted requiring a speedy knowledge of claims to enable the company to keep an account of its transactions before, by reason of their great number, they cease to be within their recollection and control. If authority be needed in addition to these reasons, it will be found in the case of Lewis v. Railway Co., 5 Hurl. & N. 867."

In Cole v. Telegraph Co., 33 Minn. 227, 22 N. W. 385, the court says: "It cannot be contended that a regulation requiring the sender of a message to present his claim for damages in writing promptly to the company is an unreasonable one. Considering the character of its business, such regulation would be necessary for its own protection, and to enable it to reasonably ascertain the facts in the case, and to secure and preserve the proper evidence. It is not a regulation intended to shield the company from the consequences of a neglect of duty on its part, but prescribing a duty to be performed by the plaintiff before he should be entitled to maintain his action."

The following cases are to the same effect: Sherrill v. Telegraph Co., supra; Smith-Frazier Boot & Shoe Co. v. Western Union Telegraph Co., 49 Mo. App. 99; Heimman v. Telegraph Co., 57 Wis. 562, 16 N. W. 32; Telegraph Co. v. Meredith, 95 Ind. 93.

In Primrose v. Western Union Telegraph Co., 14 Sup. Ct. 1098, the reasonableness and validity of such rules and regulations are discussed by Justice GRAY, of the United States supreme court.

Concerning the ordinary regulations which relieves the company from liability for its negligence in transmitting an unrepeated message, Mr. Justice EARL, in Kiley v. Telegraph Co., 109 N. Y., at page 235, 16 N. E. 75, says: "That a telegraph company has the right to exact such a stipulation from its customers

is the settled law in this state, and in most of the other states in the Union and in England.''

It appearing that the stipulation under consideration has been upheld and enforced as a reasonable regulation, limiting no liability, in jurisdictions where, by express statutory enactment, all contracts to limit such liability are declared to be null and void, the right to exact, as a condition precedent, compliance with reasonable rules, which in no manner pertain to the carrier's liability for negligence, is not affected by the provisions of our statute which authorizes a contract limiting the liability of a common carrier.

In a leading case (Express Co. v. Caldwell, 21 Wall. 264), Mr. Justice STRONG, speaking for the Supreme Court of the United States, says: "The question, then, which is presented to us by this record, is whether the stipulation asserted in the defendant's plea is a reasonable one, not inconsistent with sound public policy. It may be remarked, in the first place, that the stipulation is not a conventional limitation of the right of the carrier's employer to sue. He is left at liberty to sue at any time within the period fixed by the statute of limitations. He is only required to make his claim within ninety days, in season to enable the carrier to ascertain what the facts are; and, having made his claim, he may delay his suit. It may also be remarked that the contract is not a stipulation for exemption from the responsibility for the defendant's negligence, or for that of their servants. It is freely conceded that, had it been such, it would have been against the policy of the law and inoperative. Such was our opinion in Railroad Co. v. Lockwood [17 Wall. 357]. A common carrier is always responsible for his negligence, no matter what his stipulations may be. But an agreement that, in case of failure by the carrier to deliver the goods, a claim shall be made by the bailor or by the consignee within a specified period, if that period be a reasonable one, is altogether of a different character. It contravenes no public policy. It excuses no neglect. It is perfectly consistent with holding the carrier to the fullest measure of good

faith, of diligence, and of capacity, which the strictest rules of the common law ever required." Page 268. "It purported to relieve the defendents from no part of the obligations of a common carrier. They were bound to the same diligence, fidelity and care as they would have been required to exercise if no such agreement had been made. All that the stipulation required was that the shipper, in case the package was lost or damaged, should assert his claim in season to enable the defendant's to ascertain the facts; in other words, that he should assert it within ninety days." Page 272.

If we are correct in our conclusion that, under the circumstances of this case, the requirement under consideration, though beneficial to the company, neither limited its liability nor the time for commencing an action, and was reasonable, and by securing promptness in presenting a claim for damages, tended to enable plaintiff to hold defendant to the strictest accountability, the force and effect of the foregoing authorities, as applied to this case, is not diminished by the fact that consent had been obtained by the signing of telegrams written on blanks containing the printed regulations, or by the delivery and acceptance of a receipt for the property transmitted, which in law has been construed to constitute an assent to the provisions thereof. Our conclusion therefore is that our former decision should be disaffirmed, and the judgment appealed from is reversed.

KELLAM, J. (dissenting). I adhere to the original decision and opinion. In my judgment, the error of the present opinion is fundamental. Its theory and the scope of the question involved, as viewed by the court, are indicated it the outset, as follows: "Although Sections 3886 and 3888 of the Compiled Laws authorize and would sustain an express agreement limiting the obligations of a telegraph company to accept, transmit, and deliver a telegram a regulation exacting such an agreement as a condition precedent to the acceptance of the message is repugnant to the spirit of the statute, and would be condemned as fraudulent, oppressive, and

contrary to every consideration of public policy." It is thus evident that the court understands that the duty to "accept, safely transmit, and promptly deliver" embraces all the "obligations" of the telegraph company as a common carrier which a regulation of the company is not equally efficacious to control as an express agreement of the parties; in other words, that the precise manner in which a company shall perform its statutory duty is so important that nothing short of an express agreement can change or modify it, but that its obligation to respond in damages for a violation of its duty is of such minor importance that it may legally exact, as a condition precedent to the performance of its duty, that the party offering the message shall expressly and unqualifiedly agree that it shall not be liable at all unless such party shall perform another condition precedent, not required by the law, but by a demand of the company. · I had always supposed that a stipulation prescribing conditions under which there should be no liability, when without such stipulation there would be full liability, was a stipulation limiting liability. "Liability" and "obligation" are correlative terms. The obligation must measure the liability, and whatever cuts off or excuses liability reaches back and affects the obligation for the obligation of the carrier, like that of any other person, is only to meet his liability. The mistake of the foregoing opinion, in my judgment, is in misinterpreting the scope of our statute and the judicial decisions which it was meant to codify, and in making it refer, not to the general obligation of a carrier, but only to the particular manner in which he performs his service of carriage.

The opinion proceeds to demonstrate—unnecessarily, I think, for nobody disputes the proposition—that this very provision, when made the subject of an express agreement between the parties, has often been held enforceable as reasonable; and so it is argued that, because it is a reasonable stipulation for the parties to make, it is one which the company may require a party to assent to and make before it will undertake to perform the duty imposed upon it by law. Such logic has not often, and probably never, been applied to other cases. A provision in a mortgage for

an attorney's fee for foreclosure is held to be reasonable and enforceable when the parties have so agreed; but I think a court, finding a party under obligation to give a mortgage, and so decreeing, would be slow to say that the mortgagee might exact such a stipulation simply because, if voluntarily made, the court would uphold it as reasonable. Why not leave both parties on an equal footing in the determination of the question of what is and what is not reasonable, and not compel one of them, in form at least, to stipulate away his right to raise the question, regardless of excusing facts, as a condition precedent to having his message sent? Section 3910, Comp. Laws, entitles every person whose message is refused contrary to law to $50 in addition to his actual damages. In Kirby v. Telegragh Co., 57 N. W. 202, this court was very positive and explicit in characterizing this $50 as a penalty, "imposed on the carrier as a pecuniary punishment for his failure to comply with the provisions of the statute." But this court finds no difficulty in holding that the company may exact an agreement in advance, and as a condition upon which, only, it will receive a message, that it shall not be liable for this penalty, imposed as a punishment on grounds of public policy, unless the sender shall comply, not with some provision of the law, but with a particular regulation which it has made. Here, as before, the question is not, what would be the effect of such an express agreement if voluntarily made, but has the company the right to exact such an express agreement before it will receive a message?

I make these suggestions in the belief that the present opinion, except in form, does not reach the question in controversy; certainly none of the cited cases decide it. They all go upon the question of what stipulation or agreement, when duly made by the parties, will be sustained as reasonable. None of them touch the question of the right of the carrier to exact a formal execution of such an agreement upon the part of the sender before it will receive and send his message. I cannot but regard the quotation appearing in the prevailing opinion, taken from Kiley v. Telegraph Co., 109 N. Y. 235, 16 N. E. 75, as at least an infelicious expression

by a very learned judge. If it was meant to declare the legal right of the company to exact the making of such a contract by the sender before his message would be received, then it is sufficient to establish the remark as dictum that no such question was in the case. The contract had been expressly made between the company and the sender, and the court was only determining the legal effect of such a contract when made by the parties. The opinion starts out by saying: "The telegram was written on one of the ordinary blanks of the company. Immediately above the telegram were the words, 'Send the following message subject to the above terms, which are hereby agreed to." The court, finding that the parties had voluntarily made a contract proceeded to construe the stipulation found in such express contract. Of the cases cited by Judge EARL as supporting the text, it is remarkable that not a single one of them treats of the right of the company to exact the making of such an agreement on the part of the sender, as a condition precedent to the sending of a message. In all of them, except Kirkland v. Dinsmore, 62 N. Y. 171, the agreement had been voluntarily and expressly entered into, and the courts held that the stipulations of such contract were enforceable, because they were such as the parties might reasonably make. Kirkland v. Dinsmore held that an express company delivering to a shipper a receipt for goods, which he accepts without objection, has a right to infer an assent on the part of the shipper to the reasonable conditions of such receipt, thus making a contract between them. But in this jurisdiction the law is otherwise, by express statute. It is the settled law that a railroad company, as a common carrier, may make reasonable regulations for the conduct of its business; but I am not satisfied that it is settled law that the railroad company may refuse to sell a passenger a ticket unless he will in advance enter into an agreement that the ticket is accepted by him subject to certain conditions or regulations of the company. It may be said that such an agreement would not change the rights or liabilities of either party, because the company's regulations, if reasonable, would be enforced without an

agreement, and, if unreasonable, would not be enforced with an agreement. Why not say the same thing in the case of the telegraph company? The majority opinion says: "We are therefore called upon to consider and determine whether the regulation complained of was reasonable." I respectfully insist that that question is not before us. So far as I know, nobody questions the right of the company, as a common carrier, to make reasonable regulations for the conduct of its business, nor, so far as I know, is anybody questioning the reasonableness of this particular regulation. The law itself imposes upon the company, as a common carrier, certain duties.

It also confers upon it certain rights, and among them is the right to make reasonable regulations for the management of its business, and it says these regulations, so far as reasonable, are binding upon those who do business with it. This being all that is necessary to protect the rights of both parties the law goes no further. It does not allow either party to require from the other the execution of an additional contract with reference to such regulations. If such contract is not to, and does not change the rights and obligations of either party, then it is useless. It is what the statute denominates an "idle act," which cannot be required of either party. Comp. Laws, § 4719. If, on the other hand, such agreement is designated to affect what would otherwise be the rights or obligations of either party, then, surely, one party cannot compel the other to assent to it, for mutual voluntary assent is the life of every agreement.

I do not suppose it would be claimed that one party, more than the other, has the right to insist upon the execution of a contract by the other before he would perform on his part. Suppose, then, this company should discontinue the use of the contract feature of their blank, and should simply print their regulations at the head of their message blank; could one offering a message for transmission require the company to execute an agreement with him that it would transmit and deliver the message and respond in damages, if any occurred, in compliance with its printed regula-

tions? I apprehend the ready answer of the company to such a demand would be this: "There are our regulations. If reasonable they are equally enforceable by and available to both parties, and as well without as with an agreement. An executed written agreement would not change the rights of either party, and we decline to make it." Except for the decision of this court as now announced, I would have supposed such an answer adequate, and to justify the company in its refusal to execute a further contract. The right of the company to demand such a contract before it will undertake the duties imposed upon it by law once conceded, where is it to stop? May it include within its terms only such of its regulations as it considers of particular advantage to itself, omitting others which the sender of the message may desire to have it contain? Is it left with the company to dictate the terms of the agreement? Suppose the sender should say to the company: "You have another regulation with reference to the prompt and free delivery of messages, which does not appear in this agreement. I want that put in." May the company refuse, and still require the sender to sign the agreement as it has prepared it, as a condition of having its message sent? If so, such a discrimination between the parties would seem to me to furnish an apt illustration of making fish of one and fowl of the other. One of two things must certainly be true—either the making of the agreement changes the rights of the parties, or it does not. If it does, one party cannot insist upon its being made against the consent of the other, for then it would not be an agreement. If it does not, then the making of the agreement is an idle act, which is never required. With these suggestions, I adhere to the former, original opinion.